## THE STATE v. JAMES ROBINSON, Appellant.

### Division Two, July 15, 1911.

1. **ACCESSORY: Instruction: "Said Felony."** An instruction in: a prosecution against defendant as an accessory before the fact to the crime of false registration, which begins by telling the jury that they must pass upon the question of the guilt of the principal, and if they find him guilty then they shall proceed to determine what connection the defendant had with "said felony," is not erroneous. The jury are supposed to understand that the existence of "said felony" is not determined until they themselves determine it.

2. ——: ——: **Guilt or Innocence of Another.** And an instruction, set out in the opinion, which tells the jury that it is their duty to consider exclusively the guilt or innocence of defendant "without regard to the question of the probable guilt or innocence of any other person of any crime," is *held* not prejudicial to defendant, under the circumstances of this case, although, standing by itself, it is subject to verbal criticism.

3. ——: **Indictment: "Peace and Dignity of the State."** It is not necessary to the validity of an indictment for participation as an accessory before the fact in the crime of false registration that the words, "against the peace and dignity of the State," follow the statement of the principal's alleged offense, when they appear, as they do here, at the close of the indictment.

4. ——: **Instruction: Reasonable Doubt.** In a prosecution for participating as an accessory before the fact in the crime of false registration, there is no error in the failure of the court to instruct the jury that they should acquit defendant unless they find beyond a reasonable doubt that the principal registered falsely. It was sufficient to instruct as to reasonable doubt upon the whole case.

Appeal from St. Louis City Circuit Court.—*Hon. George H. Shields,* Judge.

AFFIRMED.

*Henry Rowe* and *Thomas J. Rowe, Jr.,* for appellant.

(1) The constitutive facts of the registration of the principal are not alleged to have been done "against the peace and dignity of the State." In other words, the contention of defendant is that the allegations of the indictment are insufficient to charge the principal with the commission of a felony or any other offense; and if the indictment thus fails to charge the commission of a felony by the principal it is only natural and logical to conclude that it could not, even by the grossest distortion of language, charge the defendant James Robinson as an accessory before the fact to a felony. (2) In instruction three the court assumed and stated as a fact the commission of a felony by Percy Everson. The usual and essential conditional clause was conspicuous by its absence. The usurpation by this instruction of the legitimate functions of the jury is egregious error and warrants a reversal. State v. Dillihunty, 18 Mo. 331; State v. Hecox, 83 Mo. 531; State v. Marsh, 171 Mo. 523; State v. Bonner, 178 Mo. 424; State v. Allen, 94 Mo. 508. (3) The significance and effect of the phraseology, "without regard to the question of the probable guilt or innocence of any other person of any crime," as used in instruction 7, is to declare that the defendant James Robinson may, to use a paradox, be guilty as an accessory to a felony although in fact no felony was committed. (4) The failure of the court to instruct the jury that they must believe beyond a reasonable doubt that a felony was committed by Percy Everson is reversible error.

*Elliott W. Major,* Attorney-General, and *John M. Atkinson,* Assistant Attorney-General, for the State.

(1) The indictment in this cause is sufficient in form and substance. Sec. 4441, R. S. 1909; State v. Keating, 223 Mo. 93; State v. Keating, 202 Mo. 197; State v. Walsh, 203 Mo. 605; State v. Cummings, 206 Mo. 613; State v. Tiernan, 223 Mo. 147; State v. Clancy, 228 Mo. 476; State v. O'Brien, 228 Mo. 410; State v. Thavanot, 225 Mo. 545. The indictment is not subject to any of the defects pointed out in the cases of State v. Keating, 202 Mo. 197, and State v. Walsh, 203 Mo. 605. (2) The proof shows that appellant was present, aiding, counseling, procuring and hiring the said Percy Everson to illegally register, as charged in the indictment. Appellant is, therefore, as guilty as the principal, Everson, and is, in fact, made so by statute. Sec. 4898, R. S. 1909; State v. Hickman, 95 Mo. 322; State v. Hermann, 117 Mo. 629; State v. Kennedy, 177 Mo. 119; State v. Sykes, 191 Mo. 78. (3) We have carefully examined the record and fail to find any prejudicial error in the rulings of the court as to the admission or exclusion of evidence. The instructions given on the part of the State fully and fairly cover the law of the case and are free from any objections urged by appellant.

ROY, C.—Defendant, with others, was indicted, as accessory before the fact to the crime of false registration alleged to have been committed by Percy Everson in the 6th precinct of the 3d ward in the city of St. Louis, on February 18, 1909.

A severance was granted defendant and he was convicted and sentenced to five years in the penitentiary.

On the trial there was evidence that a general registration of voters was had in said city on the 18th day of February, 1909, and there was evidence tending to prove that Percy Everson procured himself to

be illegally and fraudulently registered as a voter under two names on the same day in precinct number six of the third ward of said city; and that he was counseled, advised and procured so to do by a gang of persons, including the defendant, who were engaged in furnishing names and addresses to persons whom they could procure to register thereunder.

Defendant testified on his own behalf, that he had no complicity in said transaction and did not in any manner counsel, aid, assist procure or command Percy Everson to procure a false and fraudulent registration, and had no knowledge of any such advice or assistance being given to him by others.

The "gang" consisted of about twenty-one persons, of whom six, including Percy Everson, testified in the case on behalf of the State.

The evidence that Everson falsely registered was overwhelming and uncontradicted. The defendant called no witness but himself. He did not attempt to show that Everson did not falsely register, but confined his efforts to an attempt to show that he did not participate in the offense. The evidence tended to show that the "gang" were engaged in registering in as many different names and at as many different places as they dared.

During the examination of one of the judges of registration the following occurred:

"Q. State to the court what he did and when he came in first? A. Well, the first time I don't know what name he registered under; the second time he registered under the name of Percy Everson.

"Q. Did he give you any name the first time?

"Mr. Gernez: One minute. I object to what he did the first time as immaterial under this indictment.

"The Court: That is on the theory that the State cannot prove anything except the offense charged in the indictment.

"Mr. Gernez. Yes, your Honor, and we have come here to defend against this; the charge is he registered—

"Mr. Newcon: I think the evidence ought to be heard.

"The Court: The Supreme Court has held quite a number of times that a series of offenses committed about the same time can be introduced for two reasons: First, to show the intent of the act of the party himself, and second, when they are a part of a series of offenses against the law, as throwing light upon the transaction, on the case before the court. Of course, I will instruct the jury that you can only convict the defendant of the offense charged in this case."

The following among other instructions were given:

"3. If you believe and find from all the evidence in this case that on the 18th day of February, 1909, a general registration of electors and voters was held in the city of St. Louis and State of Missouri, and in every election precinct of said city, by the duly appointed and acting judges, clerks and officers of election and registration; that the sixth election precinct of the third ward of said city of St. Louis was then and there one of the election precincts of said city of St. Louis, and if you further find from all the evidence that on said 18th day of February, 1909, and while said registration of electors and voters was in progress and being held (if you find that said registration was held as aforesaid) that one Percy Everson did appear at the place of registration at number 1508 North 11th Street in said city in said sixth election precinct of the third ward of said city of St. Louis before the duly appointed and acting judges, clerks and officers of registration of said election precinct and wilfully, knowingly, fraudulently and falsely stated to said judges, clerks and officers of registration for said election precinct that his name was Percy Everson and that

his residence was number 1012 Carr street in said city of St. Louis and that he was a resident of said precinct and had a right to register and vote in said precinct and wilfully, knowingly, fraudulently and falsely requested said judges, clerks and officers of registration of said election precinct to register him, the said Percy Everson, on the books of registration of said election precinct and to enter the residence of him, the said Percy Everson, as number 1012 Carr street in said election precinct, and as a resident and qualified voter and elector of said election precinct entitled to register and vote in said election precinct as Percy Everson and residing at number 1012 Carr street in said election precinct, and if you further find that the said judges, clerks and officers of registration did then and there enter the name of Percy Everson upon the official registers and books of registration of said election precinct as residing at number 1012 Carr street in said election precinct as a registered elector and voter of said precinct and that the said Percy Everson then and there wilfully, knowingly, fraudulently and falsely signed the said official registers and books of registration by writing therein the name of Percy Everson, and if you further find from the evidence that the said Percy Everson was not then and there residing at 1012 Carr street in said election precinct and that the said Percy Everson at the time he did the acts set out in this instruction (if you find that he did the acts as set out in this instruction) knew that he did not reside at number 1012 Car street in said election precinct and knew that he did not reside in said election precinct but resided at 1716 Gay street in another precinct and ward in said city of St. Louis, then the said Percy Everson was guilty of a felony as charged in the indictment, to-wit: the felony of fraudulently, unlawfully, intentionally and falsely registering in an election precinct not having a lawful right to register therein, and wilfully

and knowingly doing an unlawful act to secure regis-
tration for himself, and if you further find and believe
from all the evidence in this case that the defendant
James Robinson, acting alone or with other persons
with a common intent and purpose, at the city of St.
Louis and State of Missouri, on or about the 18th
day of February, 1909, and within three years next
before the finding of the indictment herein, and be-
fore the .commission of the said felony ·by the said
Percy Everson of fraudulently, unlawfully, intention-
ally and falsely registering as hereinbefore defined,
did unlawfully, intentionally and fraudulently, pro-
cure, aid, counsel, solicit or advise said Percy Ever-
son to do and commit the said felony aforesaid of
fraudulently, unlawfully, intentionally and falsely reg-
istering as defined herein, you will find him, the de-
fendant James Robinson, guilty as charged in the in-
dictment and assess his punishment ·at imprisonment
in the penitentiary for a period or not less than two
nor more than five years.

"And unless you so find the facts to be you will
acquit the defendant.

"The terms 'knowingly' and 'wilfully' as used in
these instructions mean intentionally, that is, not ac-
cidentally."

"7.   The jury are instructed that in making up
your verdict it is your duty to consider exclusively
the question of the guilt or innocence of this defend-
ant under the evidence and the law as declared in
these instructions, without regard to the question of
the probable guilt or innocence of any other person
of any crime,. except that you are required to con-
sider the probability of the guilt of any witness tes-
tifying herein, as disclosed in evidence, of criminal
connection with the offense charged, or his guilt of
any other criminal offense, as tending ·to affect the
credibility of such witness and the weight to be given
to his testimony."

I. The appellant contends that the third instruction assumes the commission of the felony of false registration by Percy Everson.

We do not think any such construction can be placed upon it. It is carefully drawn and tells the jury, in effect, that their inquiry is divided into the first and second parts. That the first part is to pass upon the question of the guilt of Everson, and if they find him not guilty, their work is practically over, except to put their finding in proper form and acquit the defendant. But if they find Everson guilty, then they shall proceed to determine what connection the defendant had with "said felony."

The jury are supposed to understand that the existence of "said felony" is not determined until they themselves determine it. That is. the plain meaning of the instruction. To hold otherwise would be to hold that the words "if any" must be written with disagreeable iteration all through the instructions.

In State v. Copeman, 186 Mo. 108, Judge Fox says (l. c. 120): "It is urged that the instruction which tells the jury that 'the intent with which defendant's act or acts were done is one of the facts for you to determine from all the evidence in the case,' is erroneous for the reason that it assumes that defendant did some act or acts.

"Instructions must be read together and this declaration against which the complaint is lodged follows the main instruction; in fact, it is but a part of it, and intended as explanatory of what must be found by the jury. First, the jury are told that they must find that defendant did certain acts before they will be au-thorized in convicting him. Then follows the declaration that the intent with which the acts were done is a material fact which must be determined by the jury. The instructions, considered as a whole, do not assume the existence of any material fact, but on the

contrary require the jury to find every essential element necessary to constitute the offense charged.''

In State v. Psycher, 179 Mo. 140 (l. c. 156), the following instruction was given: ''The court instructs the jury that if you find and believe from the evidence that the deed read in evidence and described in the information, or any part thereof (not including the acknowledgment of the same), was falsely made and forged, with intent to cheat and defraud, as defined in other instructions, and that the defendant had possession of the same in Saline county, Missouri, and that he made claim to the land described therein, or any part thereof, by virtue of and under said deed, then these facts constitute evidence that he committed the forgery of the same or caused the same to be forged, and that he committed said forgery in Saline county and State of Missouri, and unless he explains or accounts for his possession thereof, in a manner consistent with his innocence, then these facts are sufficient to warrant the jury in finding him guilty of forgery as charged in the information.''

In commenting on that instruction, Judge Fox says (l. c. 158): ''The court in the instructions fairly and fully submitted the question as to whether or not the deed had been forged; this being done, we think it is a clear legal proposition, that if defendant had possession of the deed and was claiming under it, it constituted strong evidence of guilt, and unless explained upon some theory consistent with his innocence, authorized his conviction.''

In Gayle v. Mo. Car & Foundry Co., 177 Mo. 427 (l. c. 453), Judge GANTT says: ''Instruction numbered 4 for plaintiff was assailed on the ground that it assumes facts not proven or which the jury alone could find. We think this contention is without merit because the whole question of damages is predicated upon the proposition ''that if the jury find for the plaintiff they will assess his damages,'' etc. To find

for the plaintiff at all they were required to find that he had been struck by the moving car, and injured, and if so, then they would 'assess his damages in such sum as the jury believe from the evidence will compensate for all pain, suffering to body and mind *caused plaintiff* as the direct result· of the injury sustained by plaintiff,' etc. This was not an assumption of anything. They must first find his injury and then compensate him for it. Neither was there any assumption as to medical attendance."

II. The correctness of instruction numbered 7 is challenged. It must. be frankly admitted that, standing by itself, it is subject to verbal criticism; but when we consider that there was testimony as to many offenses committed by witnesses for the State on that day, and as to defendant's connection with them, and considering further that the court stated during the trial that it would give an instruction on the subject of other offenses, we are satisfied that said instruction was intended as a benefit to the defendant, and that it did not prejudice his case.

III. Appellant contends that the words "against the peace and dignity of the State" should appear in the indictment after the allegation of false registration by Everson and prior to the allegation as to defendant's participation therein, as well as at the end of the indictment.

Quoting from his brief, counsel insists that without those words "the allegations of the indictment are insufficient to charge the principal with the commission of a felony or any other offense; and if the indictment thus fails to charge the commission of a felony by the principal, it is only natural and logical to conclude that it would not, even by the grossest distortion of language, charge the defendant James Robinson as an accessory before the fact to a felony."

In view of the fact that it is only by force of the Constitution that the antiquated phrase keeps its place at the end of the indictment or count, we can see no reason for enlarging the power of its uselessness, especially as we have not been shown any authority for it.

IV.  We do not think there was error in the failure of the court to instruct the jury that they should acquit, unless they found beyond a reasonable doubt that Everson registered falsely.  It was sufficient to instruct as to reasonable doubt upon the whole case. [State v. Good, 132 Mo. 114 (1. c. 126); State v. Wells, 111 Mo. 533.]  The nature of this case does not take it out of the general rule.

There was no error in admission of evidence and we affirm the judgment.

*Bond, C.,* dissents.

PER CURIAM.—The foregoing report of Roy, C., is hereby adopted as the opinion of the court.