## THE STATE v. HARRY TAYLOR, Appellant.

Division Two, March 18, 1922.

1. **CRIMINAL LAW: Trial: Demurrer to Evidence.** In a prosecution for robbery in the first degree, where there was substantial testimony to sustain the verdict of guilty, a demurrer to the State's evidence was properly overruled.

2. ——: ——: **Improper Remarks of State's Attorneys.** Where the State's attorneys made improper remarks in the presence of the jury, on a trial for robbery in the first degree, and defendant's objections thereto were promptly sustained and the attorneys were reprimanded and the jury admonished not to consider such remarks in rendering their verdict, there was no error.

3. ——: ——: **Irrelevant Testimony: Not Prejudicial.** The admission by the trial court, on a trial for robbery in the first degree, of irrelevant testimony by some of the State's witnesses, was not error, where a careful analysis of the same, in the light of all the testimony, fails to disclose in what manner its admission could have been prejudicial to defendant.

4. ——: ——: **Defendant as Witness: Cross-Examination: Objectionable Questions.** Where defendant was on trial on a charge of robbery in the first degree and was a witness in his own behalf, objectionable questions propounded to him on cross-examination by counsel for the State, which were excluded by the trial court from the consideration of the jury, did not constitute error.

5. ——: ——: **Proof of Good Character: Discharge From United States Army.** In a prosecution for robbery in the first degree, a certificate of honorable discharge of the defendant from the United States Army, as authorized by Section 147 of the Articles of War, signed in this instance by a colonel of infantry and stating the facts in regard to the services of defendant and that his character was excellent at the date it was issued, being merely a written declaration wholly *ex parte* made by a third party out of court, was incompetent to prove defendant's good character, and its exclusion was not error.

6. ——: ——: **Remarks by Court.** It was prejudicial to defendant and was reversible error for the trial court, on a trial for robbery in the first degree, in excluding a certificate of defendant's discharge from the United States Army, when offered in his

State v. Taylor.

behalf as proof of good character, to remark that "there never was a document better calculated to discharge a guilty man than that one."

7. ——: ——: Instructions: Defining Punishment. It was not error for the trial court on a trial for robbery in the first degree, to give an instruction which, after setting forth the facts which, if found by the jury, would sustain a conviction, went on to say "then the jury will find defendant guilty of robbery in the first degree and assess his punishment at imprisonment in the State penitentiary for any term not less than five years," as authorized by Section 3310, Revised Statutes 1919, there being no proof of defendant's expectation of life and no request by defendant for a more definite instruction giving the jury the right to fix his punishment at imprisonment for life under Section 3698, Revised Statutes 1919.

8. ——: ——: ——: Withdrawing. The trial court in a prosecution for robbery in the first degree has not only the power, but it is its duty, at any time during the trial, and especially, as in this case, before the jury has retired to consider their verdict, to withdraw an instruction on the ground that there was no evidence to support it.

9. ——: Constitutional Law: Cruel and Unusual Punishment. The fact that Section 3310, Revised Statutes 1919, fixes the punishment for robbery in the first degree at imprisonment in the State penitentiary for not less than five years, with no limit to the duration of such imprisonment, which under Section 3698 may be for the natural life of the offender, does not render said Section 3310 unconstitutional as fixing a cruel and unusual punishment, the constitutional provision being directed at the character and not the duration of the punishment.

Appeal from Jackson Criminal Court.—*Hon. Edward E. Porterfield,* Judge.

REVERSED AND REMANDED.

*Joseph F. Aylward* and *Harry L. Jacobs* for appellant.

(1) There is no evidence that appellant participated in the robbery charged in the indictment. His every act was consistent with innocence, and not guilt. There was no evidence of any connection between the robbery and appellant. State v. Hammons. 226 Mo. 604. (2) Inadmissible and prejudicial evidence was admitted at

State v. Taylor.

the trial, and improper comments and argument were made before the jury by the assistant prosecuting attorney, and the court. State v. Wright, 161 Mo. App. 597; State v. Doerries, 168 Mo. App. 324; State v. Drew, 213 S. W. 106. (3) The honorable discharge of appellant from the army was admissible in evidence to show previous good character, it being an official statement, executed pursuant to law. State v. Anslinger, 171 Mo. 600; Kelley's Crim. Law & Prac., sec. 252, p. 208; Davis' Mil. Law, p. 6; United States v. Freeman, 3 How. 556; Gratiot v. United States, 4 How. 80.; United States v. Eliason, 16 Pet. 291; Kurtz v. Moffitt, 115 U. S. 487; 39 Stat. at L. 650-670; 3 Wigmore on Ev. secs. 1630, 1632, 1633, pp. 1976, 1977, 1980-1983; 22 C. J. 809, sec. 922; 2 Ency. Ev. 963; Davis Mil. Law, p. 275; Gurno v. Admrs. of Janis, 6 Mo. 330; Evanston v. Gunn, 99 U. S. 660; Priddy v. Boice, 201 Mo. 309; State v. Salmon, 216 Mo. 466; Reynolds v. Ins. Co., 88 Mo. App. 679; Levels v. Railroad, 196 Mo. 606; Camors v. Gomila, 9 Mo. App. 205; St. Louis v. Arnot, 94 Mo. 275; Moore v. Mfg. Co., 113 Mo. 98; United States v. Cross, 20 D. C. 365; McInerny v. United States, 143 Fed. 729; Buckley v. United States, 4 How. 251; Can Co. v. United States, 240 Fed. 903; State v. Blaisdell, 33 N. H. 388; United States v. Kelly, 15 Wall. 34; United States v. Landers, 92 U. S. 77; Com. v. Mertz, 27 Ind. 103; Fitchburg v. Lunenburg, 102 Mass. 358; Matthew v. Bowman, 25 Me. 157; State v. Leonard, 6 N. H. 435; Shattuck v. Gilson, 19 N. H. 296; Gray v. Mossman, 94 Conn. 430; Cundiff v. State, 226 S. W. 412; Mobley v. State, 232 S. W. 531; Com. v. Crowley, 26 Pa. Super. Ct. 124; State v. Austin, 113 Mo. 538. (4) Instructions 2 and 3 were erroneous. Sec. 3698, R. S. 1919; State v. Britton, 183 S. W. 295. It was error to refuse to permit appellant's army discharge to be read in evidence, after same had been admitted. (5) It is unconstitutional to delegate to courts or juries unlimited power to punish, and hence the maximum punishment for robbery is five years. Secs. 3310, 3698, R. S. 1919; Sec. 30, Art. 2, Mo. Const.; Young v. Railroad, 227 Mo. 317, 318; State v. Williams, 77

Mo. 310; Morgan v. Ward, 224 Fed. 698; State v. Griffin, 87 Atl. 138; Harris v. Nixon, 27 App. Cas. 94; Board v. Redwood Co., 26 Pac. 375; In re O'Shea, 11 Cal. App. 568; Sheldon v. Hoyne, 261 Ill. 222; Arnett v. Cardwell, 135 Ky. 14; Stimpson v. Pond, 2 Curtis, 502; Regina v. Smith, 16 Ont. 454; State v. Fackler, 91 Wis. 420; Ex parte Cain, 93 Pac. 974; Town of Central v. Madden, 61 S. E. 1028; In re Bonner, 151 U. S. 259; Hankins v. The People, 106 Ill. 628; State v. Williams, 146 N. C. 618. (6) The sentence in the instant case was cruel and unusual, and hence void. Art. II. sec. 25, Mo. Constitution; People v. Murrey, 72 Mass. 17.

*Jesse W. Barrett,* Attorney-General, and *J. Henry Caruthers,* Special Assistant Attorney-General, for respondent.

(1) The appellant has failed to indicate in his motion for new trial and brief the particular testimony complained of, hence same is not properly presented for review by this court. State v. Holden, 203 Mo. 584; State v. Whitsett, 232 Mo. 529. (2) The remarks of the assistant prosecuting attorney as preserved in the record are within the range of legitimate discussion of the evidence and his conclusions were properly deducted therefrom, and therefore permissible. The remarks must be prejudicial to defendant to warrant a reversal of judgment. State v. Harvey, 214 Mo. 411. (3) The court properly refused admission in evidence the honorable discharge from the Army of appellant, which was offered in proof of his previous good character. The numerous authorities cited by appellant are not in point. People v. Eckman, 72 Cal. 582; State v. Keyes, 199 Pac. 362; Taylor v. State, 120 Ga. 858; Mobley v. State, 232 S. W. 535; Cundiff v. State, 226 S. W. 413. (4) Instruction 2 properly declares the law applicable to the evidence in this case. Instruction 3 was withdrawn from the jury. This was not error as there is no evidence in the case on which to base same, and the reading of same to the jury and then withdrawing it does not constitute revers-

ible error.   (5)   The triers of fact may determine the punishment within certain limits.   Sec. 4047, R. S. 1919; Ex parte Dusenbury, 97 Mo. 508; State v. Williams, 77 Mo. 312; Young v. Railroad, 227 Mo. 318.   (6) Sentence in this case is not cruel and unusual.   Sec. 3307, R. S. 1919; Art. 2, sec. 25, Mo. Constitution; State v. Williams, 77 Mo. 312.   (a) The sentence of twenty years in the penitentiary for an accessory before the fact to a burglary was held not to be excessive.   State v. Snyder, 263 Mo. 664.   (b) An act providing for imprisonment for life on account of second conviction is not a cruel and unusual punishment.   State v. Moore, 121 Mo. 514.

WALKER, J.—In an indictment preferred by the grand jury of Jackson County in June, 1920, the defendant was charged under Section 3307, Revised Statutes 1919, with robbery in the first degree.   Upon a trial he was convicted and sentenced to fifty years in the penitentiary.   From that judgment, this appeal is perfected.

At the beginning of the trial the defendant asked a continuance, based, in part, upon the fact that one Roy Wilson, who had been tried and convicted for participation in the crime, had, upon a separate trial, received a sentence of fifty years' imprisonment in the penitentiary, and because the trial panel in defendant's case had been present at the hearing of a robbery case just finished which had been submitted to a jury and was then under consideration.   The court, overruling this application, found the facts as stated therein not to be true, and that there was no one on the trial jury that had heard either of the cases referred to, and that there was no evidence of prejudice in the community against defendant.

The facts are as follows:   In January, 1920, an employee of a millinery house in Kansas City was on his way from a bank with cash in the sum of more than three thousand dollars to meet the payroll of his employers for that week.   He was attacked by two men at Tenth and Broadway, who assaulted him and compelled

him to turn the money over to them. Upon the crime having been consummated, they mounted a waiting automobile and started away at a high rate of speed. A motorcycle policeman, a short time thereafter, saw an automobile in which there were three men rapidly turn the corner of Admiral and McGee streets. The speed at which the car was being run probably attracted his attention and he turned and followed it. From time to time he signaled the driver of the car to stop, who, instead of doing so, increased his speed. Between Fifteenth and Sixteenth streets, however, the officer pulled up along side the car, the driver of which was subsequently identified by this policeman as the defendant. Just as this occurred, the car collided with another car and the impact diverted the court of the car in which the defendant and the other men were riding, causing it to collide with still another automobile. In this last collision, the men in the car, as well as the police officer, were thrown to the ground. Two of the men ran away and were followed on foot by the officer, who called to them several times to stop, and upon their refusing to do so, he shot at them and, as was subsequently shown, struck the defendant in the right wrist. The pursuit was continued and shortly thereafter the defendant was apprehended at Eighteenth and Oak streets. Upon being taken to the police station, his face was found to be bleeding, evidently having been cut by the broken glass of the windshield when his car collided with the other automobiles, and that he had a gunshot wound in his right wrist.

When the collision occurred, a package was seen to fall out of the wrecked car in which the defendant and the two others were riding. This package was picked up by someone who was passing and was subsequently identified to be the money which had been taken from the messenger of the millinery store and which remained intact in its original package. A chauffeur, for an auto-repair company located near the scene of the collision, saw a third man run from near the wrecked car with bleeding

face.  He came to the chauffeur and asked to be taken to a hospital.  The latter took him into his car to comply with his request when they ran into a blocked street which was undergoing repair.  When the car stopped, the injured man leaped out and started to run, but was apprehended by police officers.  He was identified as one Roy Wilson, and was subsequently shown to have been one of the three men who were in the car driven by the defendant at the time of the collision.  Every person who witnessed the collision and saw the defendant after his arrest at the police station identified him as one of the three men that were thrown from the car.  The messenger of the millinery company, however, who had been robbed, was unable to identify the defendant as one of the men who had assaulted him.

The defendant took the stand as a witness, but introduced no testimony except to state that his real name was Henry E. Kuhn, and to offer what purported to be an honorable discharge from the United States Army.  Upon the exclusion of this offer, the defendant rested his case upon the demurrer to the State's evidence.

The points stressed by the defendant in his brief are:  (1)  Insufficient evidence to sustain a conviction;  (2)  the admission of prejudicial testimony;  (3)  improper remarks of the attorneys for the State and the court;  (4)  refusal to admit in evidence the discharge of defendant from the United States Army as proof of previous good character;  (5)  the giving of instructions for the State numbered two and three; and (6) that the verdict is excessive.

I.  There was substantial testimony as disclosed by the statement of facts to sustain the verdict.  Under these circumstances the demurrer to the evidence was properly overruled.

*Demurrer to Evidence.*

II. While certain remarks of the attorneys for the State were improper, objections thereto were promptly sustained, the attorneys reprimanded and the jury admonished not to consider them in rendering their verdict.

*Improper Remarks.*

The testimony elicited by the State from the witnesses Porter and Kritser in regard to one Roy Wilson, afterwards shown to have been one of the three men who were thrown from the car, was wholly irrelevant, but a careful analysis of same in the light of all of the testimony fails to disclose in what manner its admission could have been prejudicial to the defendant. Only when the testimony objected to is supplemented by the construction given to it by able counsel for the defendant can it be construed as having the effect attributed to it.

The objectionable questions propounded to the defendant on cross-examination by counsel, for the State were excluded from the consideration of the jury, and, hence, not error.

III. It is elementary under our procedure that proof of good character may be offered by a defendant in a criminal case to lessen the probability of guilt. This rule, however, has a well-defined limitation in that the nature of the proof offered should be restricted to the traits of character involved or which may affect the offense charged.' [State v. Beckner, 194 Mo. l. c. 292, and cases cited.]

Discharge from Army.

The evidence here sought to be introduced consists of the honorable discharge of the defendant from the United States Army for the purpose of proving his good character. Leaving out of consideration the question as to whether traits of character necessary to constitute a good soldier may be reasonably construed as strengthening the presumption of defendant's innocence when charged with highway robbery, we are confronted, as necessarily preceding such a discussion, with the question as to whether the evidence of this particular nature is primarily admissible. This matter has not been ruled upon in this jurisdiction, but has elsewhere.

It is pertinent before discussing the rule of evidence involved to inquire as to the nature of a soldier's discharge. It is not contended that it is a record or a copy of a record. It consists in this instance simply, as au-

thorized by the Articles of War (Sec. 147), of a certificate of discharge, signed by a colonel of infantry, presumably the commanding officer, stating the facts in regard to the services of one Henry E. Kuhn, which the defendant stated on the witness stand was his real name, and that his character was excellent at the date, September 17, 1918, it was issued. The recognized purpose of this paper is to place in the possession of a discharged soldier, in this case the defendant, evidence of his lawful discharge and afford him authentic proof for his protection. As such it cannot be classified other than as merely a written declaration, wholly *ex parte*, made by a third party out of court, and, under a fundamental rule of evidence, not admissible.

The rule as thus stated has been announced in other jurisdictions as follows:

In Keyes v. Keyes, 199 Pac. (N. M.) l. c. 362, the Supreme Court of New Mexico affirmed the rule as above stated, although the officer making the certificate was Gen. Goethals, Governor of the Panama Canal Zone. While the paper was not a discharge, but a certificate of voluntary resignation, it contained the following affirmative statement that "during the period of the holder's employment his general workmanship was excellent and his general conduct very good." In excluding this paper, the court said: "But, even if testimony as to appellee's good moral character was an issue in the case, he could not prove it by the introduction of an *ex parte* certificate. This question has come before the courts in cases where soldiers have offered to introduce certificates of discharge, and in every instance they have been held *ex parte* declarations and inadmissible. [People v. Eckman, 72 Cal. 582, 14 Pac. 359; Taylor v. State, 120 Ga. 857, 48 S. E. 361.]"

In People v. Eckman (supra), in a prosecution for burglary, a discharge of the defendant from the United States Army certified as to his good character, the language of the court in ruling upon the same was as follows: "The second ground of error assigned by appel-

lant is the refusal of the court to allow in evidence—as proof tending to show the good character of the defendant—certificate of the discharge of the defendant from the United States Army for disability, which also certified his character to be good. It does not appear what particular traits of character were certified to in the document excluded; but we do not know of any rule which—upon. the general issue of character—allows the introduction of written declarations, official or otherwise, made by third parties out of court. We think, therefore, that this point is not tenable.''

In Taylor v. State (supra), in a prosecution for homicide, the court held that a certificate from an officer of the United States Army showing that the accused had been honorably discharged and stating. that his character was good, is not admissible in evidence to establish his good character for peaceableness, or generally.

The rule is, of course, applicable. whether the evidence is sought to be introduced to show good character or the contrary.

In State v. Shaw, 75 Wash. 326, in a prosecution for murder, it was held to be prejudicial error to receive in evidence a certificate of the defendant's dishonorable discharge from the United States Army as tending to show that he had a bad character. This rule was held to apply whether the defendant had put his character in evidence or not, the reason for. the exclusion being that it was the *ex parte* declaration of a third party out of court.

A like rule under different facts as to the nature of the document is declared in Johnson v. State, 57 Fla. 18.

In Commonwealth v. Crowley, 26 Pa. Sup. Ct. 124, the appellate court, in discussing the question of the admissibility of the discharge of a defendant from the United States Army said among other things: ''We do not deem it necessary to determine the question whether the discharge offered in evidence is self-authenticated and prima-facie admissible as evidence for any purpose. We do not deem it competent for the purpose for which

it was admitted. The paper is not a record nor does it appear to be a copy of a record. It is a document delivered to a discharge soldier presumably to place in his possession evidence of his service and his lawful discharge. It is for his use and protection only.''

In Burns v. State, 23 Tex. Cr. App. 1. c. 642, a sergeant of a company in which the accused had served was put on the stand as a witness by the State against objection and stated that he kept the record of the company during the service of the accused and that it was not good. The court held that the testimony was incompetent and reversed the case.

These are the only cases we have been able to find on this subject. Others based on different facts as to the nature of the instrument offered will be found cited in 4 Mod. Ev., Chamberlayne, sec. 3343.

The discharge in question is not in the nature of an official document, the admissibility in evidence of which is either provided for by statute or by rules in regard thereto, but is, as we have stated, but a written *ex parte* declaration and, hence, the cases discussed in this connection by the defendant are not relevant.

The Manual for Courts-Martial (issued under the authority of Section 38 of the Articles of War in the United States statutes) which, in Section 270, among other things, provides ''that the certificate of discharge may be used by the defense either before or after the findings for proof of good character,'' is foreign to a consideration of the rule under review. In declaring that the certificate may be used ''either before or after findings,'' only such findings as are made in courts-martial are intended, the entire subject of the statute being in regard to that character of proceeding. Certain it is that this statute was never intended to abrogate a general rule of evidence as applied in the courts of the different states. If so, its futility for that purpose would be too apparent to admit of discussion.

The cases of Fitchburg v. Lumenburg, 102 Mass. 358, and Hanson v. South Scituate, 115 Mass. 336, contain

nothing which militates against the rule of exclusion above stated.

Neither case contains any reference to proof of character; in each the discharge was introduced under a statute of Massachusetts (1865, p. 230) to define the soldier's status as concerned his right to a settlement in the village named and the relief consequent upon proof of such right. In what manner these discharges were authenticated to entitle them to be admitted in evidence even in cases of this character does not appear; but it is evident that they contained something more than the discharge itself from the court's ruling in the Hanson Case that "the certificate from the Adjutant General's office, signed by one of the assistant adjutants general, of what appeared from the records of that office, did not profess to be a transcript of the records, but was simply a statement of what the certifying officer, under whose hand it was, deemed to be shown by them; and was rightly rejected, even if otherwise competent, for the reason that it was clearly possible that the officer might have been mistaken as to the true conclusions to be drawn from the records. [Oakes v. Hill, 14 Pick. 442; Robbins v. Townsend, 20 Pick. 345.]"

In none of the other cases cited by the defendant was it attempted to introduce a discharge as evidence of former good character.

From all of which the conclusion follows that the discharge of the defendant was incompetent and that the court did not err in excluding it.

IV. A more serious question is presented in the error assigned as to the remark of the trial judge, who, in ruling upon the inadmissibility of the defendant's discharge, said: "There never was a document Remarks better calculated to discharge a guilty man by Court. than that one."

While the judge's real mental attitude was probably one of impartiality, the words employed by him must be measured not alone by their tenor but the occasion and

circumstances under which they were uttered. To give an abstract meaning, therefore, to the remarks of a judge made during the progress of a trial, is next to impossible. The natural inclination of the human mind, be it that of a juror or another, is to give a concrete application to such remarks and to understand, however foreign to the judge's purpose, that they are meant to apply to the case on trial. The trier of the facts, therefore, is less liable to err who is content to rule without remark upon the matters submitted to him. Recognizing the wisdom of this course, no room would have been afforded for the conclusion, which we think is authorized by the judge's remark in speaking of the document excluded, as ''calculated to discharge a guilty man,'' that the defendant was referred to. Thus construed, the remark must be held to have been prejudicial.

V. The giving of instruction numbered two, so far as concerns the punishment, is assigned as error. This instruction, after setting forth the facts which, if found by the jury, will sustain a conviction, defines the punishment that may be assessed as follows: ''then you will find defendant guilty of robbery in the first degree and assess his punishment at imprisonment in the State penitentiary for any term not less than five years.'' The defendant objects to this definition of the punishment, and contends, although the instruction complies with the statute defining the punishment for robbery in the first degree (Sec. 3310, R. S. 1919), there should have been added the right of the jury to assess the punishment of the defendant at imprisonment for life as prescribed in Section 3698, Revised Statutes 1919, which is as follows: ''Whenever any offender is declared by law punishable, upon conviction, by imprisonment in the penitentiary for a term not less than any specified number of years, and no limit to the duration of such imprisonment is declared, the offender may be sentenced to imprisonment during his natural life, or for any number of years not less than such such as

*Instructions.*

are prescribed; but no person shall in any case be sentenced to imprisonment in the penitentiary for any term less than two years."

The touchstone in this matter, as in the measure of instructions generally which are objected to, is, did the instruction as given tend to prejudice the rights of the defendant. Absent this essential and it does not constitute error. Before, therefore, the instruction can be construed as prejudicial, in view of the fact that it complies with the letter of the statute, it must be shown that, as drawn, it authorizes a verdict in excess of what would have been the defendant's punishment if an opportunity had been afforded to sentence him for life. This is a matter which can only be determined from an ascertainment of the defendant's life expectancy, which the record does not disclose. Under this state of the facts, the applicable law, having been correctly declared, if the defendant desired a more definite instruction, he should have asked for it or submitted one which imposed the alternative he now insists upon. [State v. Burgess, 193 S. W. (Mo.) 821; State v. Velz, 269 Mo. 194; State v. Robinson, 236 Mo. 712.]

It is further contended that the trial court erred in withdrawing instruction numbered three from the consideration of the jury. This instruction was in regard to an alibi and was withdrawn before the jury retired to consider their verdict, on the ground that there was no evidence to support it. In what manner the defendant was injured by the court's action in this regard is not shown. It does not admit of controversy that a court has the power and it is its duty at any time during the trial, especially before the case has been submitted to the jury, to withdraw or correct an instruction if upon reflection the same is considered to have been erroneously given. [State v. Shapiro, 216 Mo. l. c. 368, 371.]

VI. It is contended that the verdict rendered in this case constitutes cruel and unusual punishment within the meaning of the State Constitution. This conten-

tion loses sight of the fact that the constitutional provision is to be regarded as directed against the character of the punishment rather than its duration. This subject was discussed with his acustomed lucidity by Judge NORTON in State v. Williams, 77 Mo. 310. In that case, as at bar, the minimum punishment prescribed was two years' imprisonment and no maximum was provided for. Without determining the exact question as to the validity of the statute so far as concerns its failure to prescribe a maximum, the conclusion reached was that the question whether the punishment was too severe and disproportionate to the offense, is for the Legislature. This question has received exhaustive consideration in other jurisdictions, in a number of which it is held, as we have indicated, that the constitutional provision was intended to be addressed more directly to the Legislature and was not intended to abridge the selection by the law-making power of such punishment as it deemed most effective in the suppression of crime. [State v. Wamsley, 68 W. Va. 103; State v. Blake, 157 N. C. 608; Duke v. Commonwealth, 13 Ky. 278; Shields v. State, 149 Ind. 395.]

*Cruel and Unusual Punishment.*

It is said in State v. Griffin, 84 N. J. L. 432, that "the fact that the Legislature provides a punishment for a given crime more severe than the courts approve, affords no ground for judicial interference; for such interference would be nothing more nor less than an attempted usurpation of the legislative power by the judiciary. It is the character and not the extent of the punishment inflicted as a penalty for the commission of crime which is struck at by the constitutional provision."

We regard this interpretation of the constitutional provision a salutary one and decline to sustain the defendant's contention in this behalf.

The error noted necessitates a reversal and remanding of this case for a new trial. It is so ordered. All concur.