PEOPLE *v.* BARTLETT.
SAME *v.* GALLESERO.
SAME *v.* SMITH.
SAME *v.* STEVENSON.
SAME *v.* WÁTKINS.
SAME *v.* LYNCH.
SAME *v.* BAATZ.
SAME *v.* ARNOT.
SAME *v.* READING.
SAME *v.* HARBISON.

1. INDICTMENT AND INFORMATION—INDORSEMENT OF RES GESTAE
WITNESSES—AFFIDAVITS.

In prosecution of several members of a city police department
and other individuals for conspiracy to obstruct justice, it was
not error upon the part of the trial judge to deny motion,
made at the opening of the trial, to require the special prose-
cutor to indorse the name of the police commissioner on the
information as a *res gestae* witness where supporting affidavits
do not disclose facts upon which a specific finding might have
been made that the police commissioner was a *res gestae*
witness, and the motion was not subsequently renewed or
called to the attention of the trial court in any way (U. S.
Const. Am. 6; Mich. Const. 1908, art. 2, §19; 3 Comp. Laws
1929, § 17254).

2. CRIMINAL LAW—PRESENTATION OF CRIMINAL TRANSACTION IN EN-
TIRETY—RES GESTAE WITNESSES—CUMULATIVE TESTIMONY.

In a criminal prosecution it is the duty of the people to show,
so far as it is possible, all parts of the transaction involving
the particular criminal offense charged and the deliberate
suppression of part of such transaction is repugnant to the
constitutional guaranties protecting the rights of the accused,
hence the names of *res gestae* witnesses must be indorsed on
the information and such witnesses called by the prosecutor
except as their testimony is merely cumulative (U. S. Const.
Am. 6; Mich. Const. 1908, art. 2, § 19; 3 Comp. Laws 1929,
§ 17254).

3. SAME—INDORSEMENT AND CALLING OF WITNESS BY PROSECUTION—
RES GESTAE—FALSE ACCUSATION.

Prosecution may not be required to indorse name of witness nor
call him unless he is a *res gestae* witness; nor need it in-
dorse and call all such witnesses, especially when crime charged
is not one of violence; but any witness should be called if his
testimony is reasonably necessary to protect accused against
a false accusation (3 Comp. Laws 1929, § 17254).

4. INDICTMENT AND INFORMATION—INDORSEMENT OF RES GESTAE
WITNESSES—ABANDONMENT OF MOTION.

Abandonment of motion to indorse the name of police commis-
sioner as a *res gestae* witness in prosecution for conspiracy
to obstruct justice was then indicated where motion, made at
opening of trial, was then denied but permission given to
renew it at any time at or before conclusion of people's case
and motion was not renewed (3 Comp. Laws 1929, § 17254).

5. SAME—INDORSEMENT OF RES GESTAE WITNESSES—ABANDONMENT
OF MOTION—TRIAL JUDGE.

After abandonment of motion to indorse the name of an alleged
*res gestae* witness in conspiracy case, which motion was made
on behalf of certain defendants not involved in this appeal
and denied at the opening of the trial, appealing defendants
would not be in a position to complain merely because the
trial court did not, on his own motion, raise the matter for
further consideration (3 Comp. Laws 1929, § 17254).

6. CRIMINAL LAW—RES GESTAE WITNESSES—CUMULATIVE TESTIMONY
—QUESTIONS REVIEWABLE.

Whether or not testimony of alleged *res gestae* witness in con-
spiracy case was merely cumulative is not determined where
motion to indorse his name on the information was made and
denied at the opening of the trial and the matter was not pre-
sented either by appellants' counsel or the trial court after tes-
timony of other witnesses had been taken (3 Comp. Laws
1929, § 17254).

7. CONSPIRACY—OBSTRUCTING JUSTICE—EVIDENCE—CREDIBILITY OF
WITNESSES.

In prosecution of police officers and others for conspiracy to ob-
struct justice, the testimony against each of the appellants
herein, who were among the 27 convicted by a jury on trial of
67, was sufficient to justify submitting question of guilt as to
each to the jury and to support verdict returned, the credibil-
ity of the witnesses being a matter for the jury.

8. SAME—OBSTRUCTING JUSTICE—TIME—KNOWLEDGE AS· TO COCONSPIRATORS.

In a prosecution for conspiracy to obstruct justice covering a period of several years it was not necessary to establish that any defendant was a party to the conspiracy during the entire period alleged in the information nor that appellants, some of the 27 convicted in a trial of 67, knew the names and specific acts of all other conspirators.

9. SAME—DECLARATIONS MADE BEFORE EXISTENCE OF CONSPIRACY.

While declarations of an alleged coconspirator, made before the existence of conspiracy to obstruct justice, would be inadmissible on trial of persons charged, testimony of one witness as to facts with reference to organization of partnership specifically mentioned in the information was properly admitted, especially where a second witness testified on that particular phase of the case without objection.

10. EVIDENCE—JUDICIAL NOTICE—ODIUM ATTACHED TO NAME OF A PERSON.

A court cannot take judicial notice that odium attaches to the name of a private individual whose name was repeatedly mentioned in the course of a trial on a criminal charge.

11. CRIMINAL LAW—CONSPIRACY—DIRECTED VERDICT—EVIDENCE.

Trial court was not in error in refusing to direct verdicts of not guilty as to appellants where evidence of their guilt of crime of conspiracy to obstruct justice was sufficient to submit case as to them to the jury.

12. SAME—CROSS-EXAMINATION—IMMATERIAL MATTERS.

Restriction on cross-examination of a police lieutenant in charge of city police record bureau with reference to meritorious citations awarded appellant members of police force on trial for· conspiracy to obstruct justice was proper where witness had been called to show connection of certain appellants with the police department, the length of service of each and place of service since such cross-examination was immaterial.

13. WITNESSES—CROSS-EXAMINATION—MATTER OF RIGHT.

While cross-examination on matters in issue or directly relevant to the issue is a matter of right, the restriction of cross-examination on immaterial matters does not constitute error.

14. EVIDENCE—CHARACTER.

Character may not be shown by specific instances of good conduct.

15. Same—Character—Conspiracy to Obstruct Justice.

    Offer of proof of meritorious citations awarded to appellant members of city police force by their superior officers was, in effect, an offer of opinion evidence, was not competent on issue of guilt of appellants charged with conspiracy to obstruct justice and was properly excluded by trial court.

16. Criminal Law—Misconduct of Juror—Discretion of Court.

    Motion to dismiss juror number 14 in trial of 67 defendants on charge of conspiracy to obstruct justice was not an abuse of discretion where his alleged misconduct in smiling or grimacing in direction of prosecutor's table was not prompted by a feeling of prejudice against any one connected with the trial, matter was immediately investigated by the trial court, trial covered a period of several weeks and afforded ample opportunity to note conduct of jurors and significance of the conduct was wholly a matter of conjecture.

17. Conspiracy—Instructions—Discrimination.

    In prosecution of some 67 defendants on charge of conspiracy to obstruct justice, none of the appellants herein who were among the 27 convicted was discriminated against in the charge of the court by undue emphasis on the proofs against him or prejudiced because of the use of his name therein in view of the large number of defendants and the fact that most of the appellants held a position as inspector or lieutenant in the police department.

18. Same—Acquittal of Some Defendants.

    Appellants, convicted of charge of conspiracy to obstruct justice, cannot predicate a claim of error on the fact that the jury acquitted other defendants.

19. Criminal Law—New Trial—Verdict—Evidence.

    A new trial was properly refused appellants who were among those convicted of conspiracy to obstruct justice where the evidence clearly supported the verdict of the jury.

Appeal from Wayne; Pugsley (Earl C.), J., presiding. Submitted October 11, 1945. (Docket Nos. 73, 75, Calendar Nos. 42,283, 42,287.) Decided December 3, 1945. Rehearings denied January 7, 1946, to all appellants except defendant Reading who had not applied therefor.

Harry Bartlett, Jack Gallesero, Frank Smith, Henry Stevenson, James Watkins, James Lynch,

Christian Baatz, Fred L. Arnot, Richard W. Reading, Jr., and Mason J. Harbison were convicted of conspiracy to obstruct justice. Affirmed.

*Schudlich & Jefferson,* for appellants.

*John R. Dethmers,* Attorney General, *Edmund E. Shepherd,* Solicitor General, and *Daniel J. O'Hara,* Assistant Attorney General, for the people.

Carr, J. These defendants, with others, were tried on an information charging them with the crime of criminal conspiracy and were convicted by a jury. They have prosecuted their appeals on the same record that was filed in the case of *People* v. *Heidt, ante,* 629. Reference is made to the opinion in that case for a statement of the general facts involved, the nature of the charge as set forth in the information, and the theory on which the prosecution was based.

These appellants raise the following questions:

"1. Does the failure of the State to call Heinrich Pickert, Detroit police commissioner, as a State's witness against the appellants constitute a violation and infringement of the appellants' constitutional rights under article 6 of the bill of rights in the Federal Constitution, and section 19 of article 2 of the Constitution of 1908 of the State of Michigan, guaranteeing unto a defendant in a criminal prosecution the right to a confrontation by witnesses?

"2. Does the State's failure to indorse the name of Heinrich Pickert, Detroit police commissioner, upon the information as a *res gestae* witness after the State had availed itself of a grand jury inquiry, and after complaint and warrant had conducted a lengthy examination, and after one of the defendants had seasonably made a motion to indorse the

name of Heinrich Pickert on the information as a State's witness, constitute reversible error?''

At the opening of the trial counsel representing three of the defendants, Clark, Burczyk and Rick, moved the court for an order to require the special prosecutor to indorse on the information, as a witness for the people, the name of Heinrich A. Pickert, formerly police commissioner of the city of Detroit. The motion alleged that Mr. Pickert, during the period charged in the information, had been police commissioner and that, as such commissioner, he was a *res gestae* witness as to the offense charged in the information. In support of the motion, two affidavits, both executed by the attorney who made the motion, were presented. Said affidavits set forth in substance that the police commissioner was in charge of the police department of the city; that he was responsible for the enforcement of laws and ordinances relating to suppression of gambling; and that he was also responsible for the policies of the department and its methods of operation. One of the affidavits further set forth that, in the opinion of the affiant, Mr. Pickert was ''a material and necessary witness to the *res gestae* of the offense as alleged and claimed by the State.'' In support of the statements made as to the duties of the police commissioner certain provisions of the city charter were quoted by counsel in his supplemental affidavit.

Following submission of the motion and argument thereon by counsel the court said:

''The ruling on this motion will be withheld at this time. The motion may be renewed at any time counsel for the defendants named in the motion wish to do so at or before the conclusion of the people's case. In the meantime if counsel for the defense believes that he is material to the prosecution of this case, they may subpoena him as their

witness to assure his attendance. I do not feel that I can intelligently at this time upon the face of the motion itself pass upon the question of whether he is a *res gestae* witness or should be made one.''

The record does not show that the motion was subsequently renewed or called to the attention of the trial court in any way. An examination of the motion itself and of the supporting affidavits discloses that no facts are set forth on which a specific finding might have been made that Mr. Pickert was a *res gestae* witness. There was no showing as to what testimony he could or would give if called as a witness for the people. The failure to grant the motion at the time it was submitted was not error.

The general rule is that in a criminal prosecution it is the duty of the people to show, so far as it is possible, all parts of the transaction involving the particular criminal offense charged. The deliberate suppression of part of such transaction is repugnant to the constitutional guaranties protecting the rights of the accused. The names of *res gestae* witnesses must, under the statute,* be indorsed and such witnesses called by the prosecutor, subject to the exception arising from the underlying reason for the rule, that testimony that is merely cumulative need not, under ordinary circumstances, be offered.

A general statement of the law of Michigan on this subject will be found in *People* v. *Kayne*, 268 Mich. 186, 194, where it was said:

''The indorsement and calling of a witness by the prosecution is not required unless he is a *res gestae* witness. *People* v. *Grant*, 111 Mich. 346. And it is not the rule that all *res gestae* witnesses

---

* See 3 Comp. Laws 1929, § 17254 (Stat. Ann. § 28.980).—RE- PORTER.

must be indorsed on the information and called by the State. *People* v. *Kindra,* 102 Mich. 147. Especially is this true when the offense charged is not a crime of violence. *Bonker* v. *People,* 37 Mich. 4. Instead the rule is that, apart from cumulation of testimony, any *res gestae* witness should be indorsed and called by the prosecution if the testimony of such witness is reasonably necessary to protect the accused against a false accusation. In *People* v. *Long,* 44 Mich. 296, it was held that failure of the prosecution to call a *res gestae* witness was not error because, as stated by Justice Campbell:

" 'His (the witness') position in regard to the facts was not such as to make him a necessary witness for the prosecution *to enable defendant to be protected against a false accusation.' "*

As stated, the showing made before the trial court on the submission of the motion was insufficient to support a finding that Mr. Pickert was, in fact, a *res gestae* witness. Counsel for defendants, in whose behalf the motion was made, did not avail himself of the privilege of renewing the motion during the presentation of the people's proofs. Such failure must be construed as indicating an intent to abandon the motion.

In *People* v. *Kayne, supra,* on which appellants rely, the motion was made in advance of the trial and was denied. After testimony had been received, the motion was renewed, being based on the record as it then stood. Not having elected to seasonably renew the motion, appellants here are not in position to complain that the trial court did not, on his own motion, raise the matter for further consideration.

It is the claim of the people that the testimony in the record, which appellants argue indicates the

various matters concerning which Mr. Pickert might have testified if called, shows clearly that such testimony would have been merely cumulative. There is much force to the claim but, inasmuch as the matter was not presented to the trial court after such testimony had been offered and received, it is unnecessary to consider the matter further.

"3. The verdict rendered was contrary to law and was against the great weight of the evidence.

"4. Did the State prove beyond a reasonable doubt that the appellants had knowledge of the alleged conspiracy?"

We have examined carefully the testimony given at the trial, bearing on the alleged guilt of each of these appellants. With reference to the defendant Bartlett it was the theory of the prosecution that moneys were collected and were disbursed in the course of the conspiracy and for the furtherance of its purpose. The witness Boettcher testified to the circumstances under which Bartlett became an inspector, and that Bartlett contributed on a monthly basis to the so-called "downtown pool." This witness, also, testified to statements made by Bartlett with reference to the collection of money in the precinct in which Bartlett was inspector. The weight to be given to this testimony as well as to other testimony of a circumstantial nature tending to implicate Bartlett was, of course, for the jury.

The witness above referred to further testified that defendant Harbison contributed to the "downtown pool," and stated the names of persons to whom money, collected in this pool, was paid out. People's witness Miller, a handbook operator, testified to the making of payments to Harbison in the sum of, approximately, $10,000 from January, 1939, until August of the same year. The witness

Richards, a handbook operator, also testified to payments made to Harbison.

Another handbook operator, produced by the people, testified that he paid defendant Gallesero, on a monthly basis, in 1939. It is the claim of the people that such payments to defendants were made in the course of the conspiracy and for the purpose of obtaining protection. The testimony given by the witness referred to, against Gallesero, was corroborated by other proof as to contacts between the witness and said defendant.

Appellant Lynch was an inspector in the Detroit police department during a portion of the period covered by the information. People's witnesses, Broudy, McDonald and Barger, all testified to the making of payments to Lynch. There was also testimony with reference to payment of meat bills for this defendant.

With reference to defendant Watkins, the people's witness Booth testified that, commencing in August, 1938, he paid $300 per month to said defendant, the witness being a handbook operator in the precinct in which defendant was inspector. The witness Boettcher further testified to contributions made by Watkins to the pool and to the receipt of money that was passed on to defendant Reading. The same witness also testified as to talks between Watkins and Ryan, whose activities in connection with the furtherance of the conspiracy are referred to in the opinion in *People* v. *Heidt, supra.*

Appellant Frank Smith was an inspector in the 9th precinct and, subsequently, in the 5th precinct, during the period from February 1, 1937, to August 7, 1940. The people's witness Chase, a handbook operator, who had an interest in certain illegal operations in the 5th precinct, testified to paying defendant Smith $100 a month and, also, that other

operators in the precinct likewise made payments to said defendant. The testimony with reference to defendant Baatz is somewhat similar. The people's witnesses Hilson and Miller, both handbook operators, testified to payments made to him. Defendant Baatz took the stand as a witness in his own behalf and denied receiving any money and, likewise, denied that he took any part in the conspiracy. Against defendant Arnot, the people offered the testimony of one Garfield Wagner, a handbook operator in the 10th precinct in which Arnot was sergeant, that the witness paid said defendant money for protection. Against this defendant there was, also, testimony from other witnesses with reference to the association between this defendant and parties to the conspiracy. Arnot, as a witness in his own behalf, denied the testimony of the people's witnesses insofar as such testimony tended to show participation in the conspiracy.

The people's witness, Miller, already referred to, testified that during the time defendant Stevenson was a sergeant on the so-called "clean-up squad," he paid said defendant the sum of $25 per month, and that later when Stevenson became a lieutenant payments were continued at the rate of $20 per month. People's witness McDonald, a handbook operator, testified to meeting Stevenson twice during the period from 1936 to 1939, and paying him money on each occasion. There was, also, testimony tending to show associations between this defendant and handbook operators.

The testimony with reference to defendant Reading, the only one of these appellants who was not a member of the police department of the city of Detroit, discloses that during a part of the time from 1935 to 1940 said defendant was acting on behalf of his father, then mayor of Detroit. The witness Boettcher testified that, in the course of the con-

spiracy, money was paid to defendant Reading. The witness Rode, formerly a police inspector in his precinct, testified to a telephone conversation with said defendant with reference to operation of handbooks, in the course of which the witness was asked to "go easy."

It is the theory of the prosecution that all of the payments to the appellants and all contributions by any of them to the pool were made in the course of the conspiracy and in furtherance of its unlawful purpose. As a matter of fact, such acts can scarcely be explained on any other basis. The credibility of the witnesses for the people was entirely a matter for the jury, and the rights of the defendants were fully protected by the charge as given by the trial court. The testimony against each of these defendants was of such a character as to justify submitting the question as to his guilt or innocence to the jury, and to support the verdict that was returned. Whether the defendants knew of the existence of the conspiracy was for the jury to determine from the evidence. It was not necessary to establish that any defendant was a party to the conspiracy during the entire period alleged in the information; nor that appellants knew the names and specific acts of all other conspirators. *People* v. *McCrea,* 303 Mich. 213; *People* v. *Ryckman,* 307 Mich. 631.

"5. Did the court err in admitting the evidence of Emerson Smith as to events occurring prior to the formation of the alleged conspiracy, and was this error sufficiently prejudicial to warrant a reversal?"

This witness was not produced on the trial and a portion of the testimony that he gave on the preliminary examination was read to the jury. Apparently this was done without objection. We find in the record the following: .

"*Mr. O'Hara:* Will the court tell me now what I can do or cannot do with Emerson Smith's testimony which I handed up to the bench last night?

"*The Court:* You may read that part of it which was not objected to. Before passing upon that, I will give you a further opportunity to be heard.

"*Mr. O'Hara:* I will read it, with the exception of that which is in question, the five pages that you objected to."

It does not appear that the portion of the testimony to which objection had been interposed was read to the jury at any time. It is claimed by appellants that the reference to the Consolidated News Bureau, and particularly to Joe Bernstein in connection therewith, was prejudicial to the defendants. Reliance is placed on the rule that bars declarations of an alleged coconspirator made before the existence of the conspiracy. In the instant case, however, the witness Smith did not testify to such declarations. He merely stated facts with reference to organization of the Consolidated News Bureau which copartnership was specifically mentioned in the information. It may be noted, also, that Joseph Bernstein was a defendant. It was competent for the people to show what the situation was with reference to the bureau and it may be assumed that the testimony of Smith was offered as a part of the proofs along this line. It may be noted, also, that the witness Timothy J. Reardon testified on this phase of the case, without objection so far as the record discloses, and repeatedly mentioned the Bernsteins. There is nothing in the record to indicate that any prejudice to defendants resulted. The court cannot take judicial notice that odium attached to the name as claimed by counsel. We think the testimony was competent; but, in any event, appellants not having objected, and the testimony of Reardon having been received without

objection, further consideration is not required. *People* v. *Wilcox,* 303 Mich. 287, 295.

"6. Did the court err in refusing to direct a verdict of 'Not Guilty' at the conclusion of the State's case, and at the conclusion of the proofs?"

What was said above with reference to assignments 3 and 4 is applicable here. The trial court was not in error in refusing to direct verdicts of not guilty.

"7. Did the court err in restricting the cross-examination of the State's witness, George Odgers, in relation to records of meritorious citations of the appellants?"

This witness, produced by the people, testified that he was a police lieutenant of the city of Detroit, in charge of the record bureau. The record indicates that he was called for the purpose of showing the connection of certain of the appellants with the police department of the city, the length of service of each, and the precincts to which each such appellant had been assigned from time to time. A stipulation covering these matters was entered into and offered as an exhibit. Thereupon counsel representing certain of the defendants sought to cross-examine Odgers as to the records with reference to meritorious citations awarded appellant members of the police department. An objection to such testimony was made by the prosecutor and was sustained by the court. No specific statement was made as to the purpose of the proof but the following colloquy is significant:

"*Mr. Schemanske:* The Court made the statement it isn't for the purpose of providing character.
"*The Court:* What is it for?
"*Mr. Schemanske:* For the purpose of showing activities as a police officer.

"*The Court:* In what connection?

"*Mr. Schemanske:* His connection as a police officer during the time he has been a police officer, as to his activities, whether citations or demerits were issued against the man during the time he was on the force of the police department of the city of Detroit."

It was further claimed that the people, by putting in the stipulation based on the records, had opened the door to cross-examination along the line indicated.

Obviously, the connection of appellants with the police department of the city was a material matter. However, whether any of the appellants had received citations or demerits was wholly immaterial as to any issue involved in the case. Counsel cite and rely on *People* v. *Dellabonda,* 265 Mich. 486, and *People* v. *McCullough,* 281 Mich. 15. In the first case cited it was said (p. 502) : "Cross-examination on matters in issue or directly relevant to the issue is a matter of right." Similar language is found in the *McCullough Case,* but the rule there stated, and sought to be invoked by appellants, has no application in the case at bar. Apparently, it was sought by cross-examination of Odgers to create in the minds of the jurors an impression or opinion that the appellants concerned were men of courage and good character. It is well settled, however, that character may not be shown by specific instances of good conduct. *People* v. *Albers,* 137 Mich. 678; *People* v. *Bollman,* 178 Mich. 159; *People* v. *Nemer,* 218 Mich. 163. Moreover, the cross-examination, excluded by the ruling of the court, was not directed to the conduct of the appellants as police officers. Rather it was designed to elicit that superior officers in the department had formed opinions that the conduct made the basis of the citations, assuming that there were such, was worthy

of recognition. Being in effect opinion evidence the proof offered was not competent. Wharton's Criminal Evidence (11th Ed.), p. 463; *State* v. *Taylor,* 293 Mo. 210 (238 S. W. 489); *People* v. *Eckman,* 72 Cal. 582 (14 Pac. 359). The court did not err in sustaining the objection to the cross-examination.

"8. Did the court err in refusing to discharge juror number 14 from further sitting on the trial jury?"

The motion to dismiss the juror in question was based on the claim of counsel for appellants that said juror was guilty of conduct in open court that indicated prejudice against appellants. Specifically, it was claimed that said juror, while court was in session and during an argument by one of the attorneys representing certain appellants, had smiled or grimaced in the direction of the prosecutor's table. Following the making of such charge the court conducted an inquiry into the matter and took testimony, which appears in the record. The prosecutor denied that he had observed any such action.

The significance of the conduct of the juror is wholly a matter of conjecture. It cannot be said that a feeling of prejudice against any one connected with the trial prompted the juror's act. The record does not show the nature of the argument of counsel at the time of the occurrence. It was, moreover, in the presence of the trial court; and after the inquiry had been made the judge indicated his conclusions. Thereupon the motion was denied. We have examined the record carefully and conclude that the trial court did not abuse his discretion. The trial covered a period of several weeks and ample opportunity was afforded to note the conduct of the jurors. The conclusion of the judge that he ought not to discharge the juror on

the basis of conjecture and suspicion, merely, was correct.

"9. Was the charge of the court argumentative and highly prejudicial thereby depriving appellants of a fair and impartial trial as guaranteed by the Constitution of the United States and of the Constitution of the State of Michigan?"

It is contended that in the court's charge appellants, who were lieutenants and inspectors in the police department, were referred to more frequently than others of lesser rank. In a case of this nature, however, the trial court in charging the jury and defining the issues to be determined cannot well avoid using the names of defendants, at least in certain instances. This is particularly true in a case in which there are a large number of defendants, with varying proofs as to each. We have examined the charge of the court and do not think that any appellant was discriminated against by undue emphasis on the proofs against him or prejudiced because of the use of his name. The suggestion that certain of the defendants, who were acquitted, may have benefited because they were not referred to in the charge as frequently as were the appellants is rather beside the point. Appellants cannot predicate a claim of error on the fact that the jury acquitted other defendants.

"10. Did the court err in denying appellants' motion for a new trial?"

For the reasons above set forth there was no error on the part of the trial court in refusing a new trial to these appellants. The evidence clearly supported the verdict of the jury; and for the reason hereinbefore assigned there was no sufficient basis for the motion.

"11. Does the State's case as presented show a multiplicity of conspiracies, and as a result, does a variance arise between the charge contained in the information and the proofs?"

This question was considered at some length in *People* v. *Heidt, supra,* and determined adversely to the claims of appellants. Further discussion is not required.

Assignments of error not specifically argued in the briefs have been examined and found to be without merit. The record does not disclose any reversible error, and the convictions are affirmed.

STARR, C. J., and NORTH, BUTZEL, BUSHNELL, SHARPE, BOYLES, and REID, JJ., concurred.