## Hogan v. Commonwealth.

(Decided September 25, 1919.)

## Appeal from Lee Circuit Court.

1. Criminal Law—Motion for Continuance.—Where following the return of an indictment against him for murder, six days intervened between the appellant's arrest thereunder and the day upon which his case was set for trial; and the truth of the statements of three absent witnesses constituting, as claimed, material evidence in his behalf, set forth in his affidavit for a continuance, was admitted by the attorney for the Commonwealth, and no showing was made by appellant that the full effect and benefit to him of the testimony of the absent witnesses could not be had without their personal presence at the trial and the oral giving of their testimony in open court, the overruling of his motion for the continuance by the trial court is not reversible error.

2. Criminal Law—Continuance—Evidence.—Although the homicide for which the appellant was indicted may be said to have resulted from a controversy between him and the deceased as to the true location of the line dividing their lands, that fact did not entitle the former to the continuance on the ground stated in his affidavit, namely: that a survey of the disputed line would furnish evidence that the line should be located as claimed by him and that the continuance asked was necessary in order that opportunity be given to make the survey. Evidence as to the location of the disputed line furnished by a survey would not have been competent. As the only issue triable under the indictment was the guilt or innocence of appellant of the crime charged, evidence as to the line should have gone no further than to show that it was in dispute and that deceased tore down the fence as changed and erected by appellant. Such evidence was properly admitted because competent to show the bad state of feeling between the parties, and as bearing on the motive actuating each of them at the time of the homicide.

3. Criminal Law—Instructions.—An instruction asked by the appellant singling out and giving undue emphasis to certain facts or features of the evidence was properly refused.

4. Criminal Law—Review of Manner of Selecting Jury.—Error of the trial court in the matter of selecting or impanelling a jury in a criminal case, is one which section 281, Criminal Code, declares shall not be reviewed by the Court of Appeals.

E. S. STAMPER and E. E. HOGG for appellant.

CHARLES H. MORRIS, Attorney General, and OVERTON S. HOGAN, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

Under an indictment charging him with the crime of murder the appellant, Winston Hogan, was tried in the Lee circuit court for shooting and killing Robert Brandenburg. By the verdict of the jury he was found guilty of voluntary manslaughter and his punishment fixed at confinement in the penitentiary for a term of five years. He was refused a new trial and has appealed.

The facts presented by the bill of evidence are few and simple. Appellant and the deceased owned adjoining tracts of land. Appellant resided on his land but deceased had his residence upon a different farm about a quarter of a mile from his tract adjoining appellant's. Appellant and deceased had a disagreement as to the location of the line dividing their lands which resulted in a bad state of feeling between them.

It was the contention of the former that the fence between the lands was not on the true line of division, but on his land a few feet from the true line, where it had some years previously been removed by his father, the then owner of this land, to give himself a narrow lane for his own use. On the other hand it was claimed by deceased that the fence in question stood on the true line dividing the lands. A day or two before the homicide appellant removed the fence to what he claimed was the true line, reconstructing it partly of rails and partly of palings. Being displeased at this act deceased, claiming to be acting under the advice of a lawyer previously obtained, left his home on the morning of the homicide with the avowed purpose of going to the disputed line and tearing down the fence erected by appellant, carrying with him a loaded pistol and an axe. Upon arriving at the place where the fence had been changed deceased proceeded to tear down the fence, using the axe for knocking off the palings. While thus engaged he was shot and killed by the appellant.

The facts thus far stated are undisputed. The only eye-witnesses to the killing were appellant and his sixteen year old daughter, Marie Hogan. According to appellant's testimony he was plowing in a field near his home when deceased began to tear down the fence. Attracted by the noise made by the latter in destroying the fence, appellant left his plow and horse, went to his residence near by where he obtained a loaded gun, walked with the weapon in his hand to within twenty yards of where deceased was tearing down the fence and commanded him to stop the work of destruction. In re-

ply to which deceased said, in substance, "I can tear down in an hour more fence than any d— son of a b— can build in a day," and at the same time drew from his right hip pocket a pistol which he immediately pointed at appellant as if about to shoot him. Thereupon appellant, believing himself to be in immediate danger of death or great bodily harm at the hands of deceased, hurriedly aimed at and shot him with the gun in his hands; that deceased continued to point the pistol at appellant as if still trying to shoot him and as appellant had no other cartridge with which to reload the gun he turned and ran to his home expecting every moment to be fired upon by deceased, though he admitted that the pistol of the latter was never discharged. The testimony of the daughter Marie corroborated that of appellant.

On the other hand it was testified by Mrs. Molly Brandenburg, widow of the deceased, introduced by the prosecution, that knowing of her husband's purpose to tear down the fence and fearing it would cause trouble, she followed him from their home to the place of the homicide and was within ten or fifteen steps of him when the shooting occurred, though unable to see him when shot or by whom he was shot, as her view of him was entirely obstructed by a house that stood between them. She further testified that immediately following the shooting and upon getting around the house she saw appellant running toward his home and met her husband as he fell in a branch from which he was removed by E. L. McIntosh and Walter McIntosh, tenants of her husband, who quickly reached the scene of the shooting upon hearing her calls for assistance; that her husband died as he was being removed from the branch and that she saw no pistol at the time though she examined his body to see whether he had one; that she did not then know that he had carried a pistol with him from his home, but admitted that Walter McIntosh told her at the place of the killing that her husband had a pistol, which was a few days later returned to her by Ringo Spicer who received it of Walter McIntosh. Mrs. Brandenburg also testified that she heard no conversation whatever between her husband and appellant before the shot which killed her husband was fired by the latter, though she was convinced that she was close enough to have heard such a conversation if it had occurred. In addition, the witness testified that she heard the knocking made by deceased in tearing

down the fence some time before she reached the house which intercepted her view of him; that he was still knocking on the fence at the time the shot which killed him was fired and, to use her language, "the knocking never broke off until he was shot. He was shot and killed right while he was knocking there."

E. L. and Walter McIntosh testified that they were attracted to the place of the shooting by the cries for help of Mrs. Brandenburg and got there about the time of the death of the deceased; that they were prevented from seeing deceased at the work of tearing down the fence and from seeing the firing of the shot which killed him by a house which obstructed their view; that they were about 130 steps from the place of the shooting and heard the noise made by deceased in tearing down the fence from the time it began and the shot, but that they did not hear any conversation between deceased and appellant before the firing of the shot.

They were unable to say, however, whether the noise made by deceased in tearing down the fence was going on at the time the shot was fired or whether it had ceased before the firing of the shot.

The persons named above were the only witnesses whose testimony threw any light upon the homicide or circumstances attending its commission.

Of the numerous grounds for a new trial relied on by appellant in the court below only the following seem to be urged in this court by his counsel for a reversal of the judgment of conviction, viz., that the trial court erred (1) in not granting appellant a continuance, (2) in selecting and impaneling the jury, (3) in failing to instruct the jury upon all the law of the case, (4) in admitting incompetent evidence.

Appellant's motion for a continuance was supported by his affidavit claiming lack of time for preparation for trial, the absence of certain witnesses and the necessity for opportunity to obtain a survey and plat showing the true location of the disputed line of division between appellant's land and that of the deceased. Upon the Commonwealth attorney agreeing to admit the truth of the statements attributed to the absent witnesses by the affidavit, the court overruled the motion for a continuance, to which appellant duly excepted. The indictment under which the steps above mentioned were taken was found and returned by the grand jury May 21st, 1919, the second day of the term, and appellant was placed under ar-

rest and brought into court on that day; whereupon the court entered an order docketing and setting the case for trial May 27th, the eighth day of the term; and it was upon the calling of the case for trial that day, following the announcement of the Commonwealth's readiness for trial, that the appellant first moved for and was refused the continuance. On the afternoon of May 27th, the work of selecting and impaneling a jury was proceeded with but not completed before the adjournment of court, and when it convened on the following morning, May 28th, the 9th day of the term, it was discovered by the Commonwealth's attorney that the endorsement on the indictment showing its character as a "true bill" had not been signed by the foreman of the grand jury; thereupon, on motion of the Commonwealth's attorney, the partially selected jury was discharged,the indictment quashed and case remanded to the same grand jury for further action, which resulted in the finding and return on the same day, and in a few minutes, of another indictment by the grand jury against appellant charging the same crime and curing the defect appearing in the first indictment.

Immediately following the return of the second indictment the court ordered that the trial of the case be proceeded with. The appellant thereupon renewed his motion for a continuance, again filing in support thereof the same affidavit, used on the first motion. But upon the Commonwealth's again admitting the truth of the facts stated in the affidavit, the motion was again overruled by the court, to which appellant entered an exception.

It is not perceived that the trial court's refusal of the continuance asked by the appellant constitutes reversible error. As the three absent witnesses named in the affidavit all admittedly live in Lee county and only a few miles from the county seat and six days intervened between the day of appellant's arrest under the indictment and that upon which the case was set for trial, it would seem that by reasonable diligence exercised during that time he might have procured the attendance of all the absent witnesses at the trial, except perhaps Mrs. Walter McIntosh, the only one served with a subpoena, whose pregnancy, it was claimed, would not have permitted her attendance. However, it was not shown by the affidavit that there was a reasonable probability of a termination of her pregnancy in time for her attendance as a witness at the succeeding term of the court.

A subpoena seems to have been issued May 21, the second day of the term, for Davis McIntosh, another of appellant's absent witnesses; but the affidavit admits that the subpoena was not served and it is not stated therein that the process was ever placed in the hands of an officer for service. But even if there had been no agreement on the part of the Commonwealth to admit as evidence in appellant's behalf the truth of the testimony attributed to the witnesses by the affidavit, that it was claimed would be furnished by this witness, namely, that the loaded pistol found by Walter McIntosh near the body of Bob Brandenburg, was at the request of the widow of the deceased, returned to her by Walter McIntosh through the agency of Ringo Spicer, the loss of such testimony to appellant would not have been prejudicial to him, as the same fact, as well as the identification of the pistol as the property of the deceased, was testified to by Spicer as a witness for the Commonwealth and also by Mrs. Brandenburg. The affidavit contains an admission that there was no subpoena issued for the remaining absent witness, Joe Brandenburg, by whom it was claimed testimony would be given of threats to tear down the fence and kill appellant made by deceased the day before the homicide, but this omission is attempted to be excused on the ground that information of the testimony that would be furnished by the witness in appellant's behalf was given the latter only the afternoon or night before his trial began, and that he did not, after receiving it, have time to have the witness summoned for the trial. The mere opinion thus expressed by the affiant cannot well be accepted as conclusive, in view of the silence of the affidavit as to the means by which he obtained information of the facts alleged to be in the possession of the witness, and its failure to show that reasonable diligence in the use of the same or other like means, if earlier employed, would not have enabled appellant to obtain information of those facts in time to procure the attendance and testimony of the witness at the trial.

The claim made in the affidavit of the necessity for time to enable appellant to obtain a survey and plat showing the true location of the line of division between his land and that of the deceased, did not entitle him to a continuance of the case. This admission of evidence as to the location of the line furnished by such a survey or plat would have been incompetent as it could but have

served to inject into the trial an issue as to title which, though triable in a civil court, in a civil action between the parties, was wholly foreign to the question to be determined under the indictment, viz., that of appellant's guilt or innocence of the crime therein charged. Evidence as to the line should have gone no further than to show that it was in dispute and that deceased tore down the fence as changed and erected by appellant, such evidence being competent to show the bad state of feeling between the parties and as bearing on the motive actuating each of them at the time of the killing. The tearing down of the fence by the deceased as erected by appellant, even if done without right by the former, did not justify the taking of his life by the latter. He had the right in such state of case without threats or showing of violence to request or command the deceased to stop the work of destruction, but not to shoot or kill him for failing to do so.

If, however, upon the making of such request or command, by appellant, the deceased drew and presented at him a loaded pistol, and appellant believed and had reasonable grounds to believe that he was then and there in immediate danger of death or great bodily harm at the hands of deceased, or which reasonably appeared to him was about to be inflicted on him by deceased, and that there was in the exercise of a reasonable judgment no other safe or to him apparently safe means of averting such danger or to him reasonably apparent, but to shoot and kill the deceased, he had the right to do so.

The fact that the court required appellant's trial to begin on the day of the second indictment was returned was not, as claimed by his counsel, a violation of the provisions of section 187 Criminal Code, for appellant had been arrested and was in custody more than three days before the day fixed for trial.

The second indictment was in effect but an amendment to the first and related back to the date upon which the original indictment was returned. Smithers, etc. v. Comlth., 12 R. 636; Bowman v. Comlth., 146 Ky. 486. But aside from the insufficiency of the grounds for the continuance presented by the appellant's affidavit the Commonwealth's admission of the truth of the statements to which it claimed the absent witnesses would, if present, testify, justified the trial court's refusal of the continuance. This ruling of the court was also author-

ized by Criminal Code, section 189, respecting the provisions of which we in Bowman v. Comlth., *supra,* said:

"Section 189 of the Criminal Code is mandatory, and in all cases where a continuance is asked at the term of court at which the indictment is returned, and a sufficient affidavit is filed in support of said motion, the court must grant the continuance, unless the attorney for the Commonwealth consent that the statements in the affidavit for a continuance, as to what the accused would prove by the absent witnesses, if present, are true. The provisions of this section, however, are applicable only where a continuance is sought at the term at which the indictment is returned. In all other cases the attorney for the Commonwealth is only required to consent that the statements in the affidavit as to what the absent witness would say may be read to the jury as the deposition of such absent witness. Clearly, the purpose of the legislature in enacting this Code provision was to prevent one accused of a crime from being pressed to trial without having been given an opportunity to secure the attendance of his witnesses and prepare for his defense. Until an indictment is returned, it is presumed that the accused would not know the exact nature of the offence for which he is to be tried; hence the wisdom and necessity of this statute. When properly applied, it insures to the accused a reasonable time within which to secure the attendance of his witnesses. This is all it was intended to do. It should not be so applied as to enable the accused to harass the Commonwealth by unnecessarily and unreasonably delaying the trial."

If there had been a showing made by appellant that the full effect and benefit to him of the testimony of his absent witnesses could not be obtained without their personal presence at the trial and an oral examination of them before the jury, it would have given stronger support to his claim of right to the continuance. But as there was no such showing, we are clearly of the opinion that the refusal of the continuance by the court was not an abuse of its discretion.

As appellant's complaint of the trial court's action in selecting and impaneling the jury by which he was tried is a matter which section 281, Criminal Code, prevents this court from reviewing, consideration thereof will be omitted.

The instructions given by the court are not criticised by appellant's counsel. He only complains of the failure

of the court to give an additional instruction defining the extent to which appellant could go in interfering to prevent the destruction of his fence. The instruction appellant claims should have been given on this point, would have improperly pointed out and given emphasis to certain features of the evidence and for that reason been misleading to the jury. The instructions given fully and fairly stated to the jury the whole law of the case and enabled the appellant to avail himself of the benefit of every right claimed for him by his counsel.

The alleged incompetent evidence complained of was that given by Green Bailey regarding the division line. Bailey was introduced by the Commonwealth at the conclusion of appellant's evidence and it is contended that his testimony was evidence in chief, which should have been introduced before that of appellant. The testimony of Bailey was not evidence in chief, but was properly introduced in rebuttal, as the first evidence on the subject of the disputed line was introduced by appellant.

Moreover, if it had been evidence in chief as claimed, it was in the discretion of the court to admit it as was done; and it is not made to appear from the record that its admission was an abuse of discretion.

We cannot agree with appellant's counsel that there was no evidence to support the verdict. According to the testimony of appellant and his daughter, in killing deceased he acted in self defense, but according to that of the latter's widow the killing was unnecessary, for her testimony was to the effect that no demand was made by appellant of her husband to stop tearing down the fence and that he shot the latter while engaged in the work of destruction, without warning him that such was his purpose.

It was the province of the jury to pass on this conflicting evidence and determine the truth of the matter, and as there was evidence to support the verdict it should not be disturbed. Being unconvinced from anything appearing in the record that appellant did not have a fair trial, the judgment is affirmed.