## Glisper v. Commonwealth.

(Decided December 16, 1919.)

## Appeal from Fayette Circuit Court.

1. Criminal Law—Sufficiency of Indictment—Appeal and Error. —As the indictment in this case followed the language of the statute in defining the crime of horse stealing charged, and clearly conforms in all respects to the requirements of the Criminal Code, the action of the trial court in overruling the demurrer filed to it by the defendant was not error.

2. Criminal Law—Bill of Particulars.—The motion of the defendant for a bill of particulars was properly overruled. A bill of particulars, if granted, could not have made plainer to the defendant's mind or that of his counsel the particular facts constituting the offense charged than they were made to appear in the indictment, or better enabled them to make his defense thereto. There is no rule of practice that requires the Commonwealth to file with or as a part of the indictment a bill of particulars containing the witnesses or evidence upon which it expects to rely for the defendant's conviction.

3. Criminal Law—Horse Stealing—Constitutional Law.—The punishment prescribed by the statute for horse stealing does not render it obnoxious to section 17, Bill of Rights, Constitution, as the punishment is neither inhuman nor excessive.

4. Criminal Law—Continuance.—The trial court's refusal of the continuance asked by the defendant was not error. As he had been in custody a week or more before the trial and his affidavit for the continuance did not name the alleged absent witnesses, indicate where they lived, what they would state, or that any steps had been taken, by the issuance of process or otherwise, to procure their attendance, the grounds relied on were insufficient to entitle him to the continuance.

5. Criminal Law—Evidence Showing Discharge of Soldier.—The ruling of the court in excluding as evidence a writing offered by the defendant on the trial for the purpose of showing his honorable discharge from the United States army as a soldier in the war in which it recently engaged with Germany, was not error, such evidence being incompetent by reason of its irrelevancy.

6. Criminal Law—Evidence of Policeman Regarding Defendant's Statements When Arrested.—The testimony of a policeman as to the statements of the defendant, made when arrested, regarding his possession of the stolen horse, was properly admitted as evidence by the court, as they were made voluntarily and without sweating or coercion.

7. Criminal Law—Instructions.—As the guilt of the defendant was established by the evidence beyond a reasonable doubt, the re-

fusal by the trial court of the instruction directing his acquittal, asked by the defendant, was eminently proper. Indeed, the giving of such an instruction would have amounted to a miscarriage of justice.

R. E. LEE MURPHY for appellant.

CHARLES H. MORRIS, Attorney General, and BEVERLY M. VINCENT, Assistant Attorney General, for appellee.

OPINION OF THE COURT BY JUDGE SETTLE—Affirming.

The appellant, Eugene Glisper, alias Julian Gillespie, a man of color, was indicted, tried and convicted in the Fayette circuit court for the crime of horse-stealing, and his punishment fixed by verdict of a jury and judgment of the court at confinement in the penitentiary for a term of four years. He was refused a new trial and has appealed.

The facts furnished by the evidence are few and undisputed. On a Sunday afternoon in October last one Ben Carter, a negro man in the employ of James Gay, a farmer of Woodford county, with Gay's consent, drove a four year old black mare, of which he was the owner, to the city of Lexington. Carter had been breaking the mare to harness for Gay and on the occasion referred to drove her to a gig or break cart. Upon arriving at Lexington, about six o'clock p. m., Carter drove to the residence of a colored friend on Fifth street, where he got out of the cart and taking therefrom a halter put it on the mare, and, with the attached rein, securely hitched her to a tree in front of the house and in the full light of an electric lamp, after which he entered the home of the friend, where he remained in conversation with the family until about nine o'clock that night, when he left the house to start for his own home at Gay's, in Woodford county, but upon reaching the place where he had hitched the mare, he discovered that neither the animal nor cart was to be seen. Failing to find or learn anything about them Carter, after giving the alarm to those about him, immediately advised his employer by telephone of their loss, and obtained the assistance of the police in making a search for them. Carter did not find the mare or cart himself, but both were found about midnight by a policeman, in the possession of appellant, who was riding in the cart and driving the mare, in another part of the city

than that from which she was taken. The police officer, upon taking the mare and cart from appellant and placing him under arrest, asked him whose property they were, and when appellant claimed them as his property he was asked by the officer where he had gotten them, and his reply was that both the mare and cart had been given to him by a colored man whom he admitted he did not know.

In addition to the foregoing facts established by the evidence on the trial, appellant was fully identified as the person who took the mare and cart from where Carter had hitched the mare, by the testimony of a colored woman who, from a window of her residence across the street, and by means of the street light, saw him approach the mare, deliberately unhitch her, remove the halter from her head and put it in the cart, then get into the vehicle himself and drive the mare away. This was about nine o'clock Sunday night, and though the witness had earlier in the evening seen Carter, whom she knew, drive the mare to where he was visiting, hitch her and enter the house, she gave him no information of the stealing of the animal or cart at the time it occurred, as she was unable to know that they were not removed by Carter's order to be cared for until morning.

Appellant did not himself go on the witness stand or offer to testify, nor did any one of the few witnesses introduced in his behalf testify to a single fact or circumstance that tended in the remotest degree to contradict or break the force of the evidence relied on by the Commonwealth to prove his guilt, and which did so strongly establish it as to destroy every barrier with which innocence is wont to surround and protect itself. Our examination of the extraordinary assignment of errors filed by appellant convinces us that none of the eighteen relied on entitle him to a reversal of the judgment appealed from. Those complaining of the action of the trial court in overruling the demurrer to the indictment, the motions to make it more specific and to require of the Commonwealth a bill of particulars, possess no merit. The indictment is without flaw. It in few words follows the language of the statute defining the offense charged and clearly conforms in every respect to the requirements of the criminal code. The bill of particulars demanded by appellant could not, if granted, have made plainer to

his mind or that of his counsel the particular facts constituting the offense charged, or better enabled him to make his defense thereto. There is no rule of practice that requires the Commonwealth to file with or as part of the indictment a bill of particulars containing the witnesses or evidence upon which it expects to rely for the defendant's conviction. It goes without saying that the demurrer and motions were properly overruled.

The objection that the statute under which appellant was convicted violates section 17 (Bill of Rights) of the Constitution, because the punishment it prescribes is excessive or inhuman, is purely imaginary, as is the contention that its auxiliary statute providing a reward for the apprehension and conviction of the horse thief, is unconstitutional, the competency of the legislature to enact such legislation having often been sustained by the courts as necessary to suppress gross crimes and persistent criminals.

The overruling of appellant's motion for a continuance was also free of error. As he was in jail when indicted and had been in custody a week or more before the trial, no reason could be urged against the right of the Commonwealth to try him at that term, other than could be shown by way of the unavoidable absence of witnesses or a want of time for preparing his defense, which was not made to appear. The affidavit filed by him did not name the alleged absent witnesses, indicate where they lived, what they would state, whether their testimony would be material or that any steps had been taken by process or otherwise to procure their attendance. In brief, there was a total absence of any showing for a continuance. Hogan v. Commonwealth, 185 Ky. 424.

Appellant's complaint of error in the impanelling of the jury we are not permitted to consider, because a review of such a matter by the Appellate Court is expressly forbidden by section 281, Criminal Code.

His complaint of the rejection of competent evidence and admission of incompetent evidence on the trial cannot be sustained. The rejected evidence consisted of a copy of appellant's discharge from the army following his service as a soldier in the late war. The evidence had no bearing on the question of appellant's guilt or innocence of the crime charged, and being clearly irrelevant was properly excluded. There was no incompetent evidence admitted, as further complained. On the cross-examina-

tion of a witness he was asked by the attorney for the Commonwealth if he did not know appellant had been confined in the penitentairy for grand larceny. The question was incompetent, but as the witness answered "no" neither the question nor answer was prejudicial to the rights of appellant.

The testimony of the policeman as to the statements of appellant regarding his possession of the stolen horse and cart was not competent, as they were made voluntarily and without any sweating or coercion. Commonwealth v. McClanahon, 153 Ky. 412.

It was not reversible error for the trial court to limit the argument to the jury to fifteen minutes to the side. The witnesses being few and the facts simple, such a limit gave ample time for all it was necessary for counsel to say in argument.

Manifestly no ground exists for the complaint of appellant that the refusal by the trial court of his motion for a directed verdict of acquittal was error. For as already stated his guilt was established by the evidence beyond a reasonable doubt, in view of which such an instruction would have amounted to a miscarriage of justice.

Although the instructions are complained of no criticism whatever is made of them. They correctly advised the jury of all the law of the case and are to be commended for their brevity and clearness. We have omitted discussion of such of the errors assigned as are without support from anything in the record and appear to have resulted from speculation on the part of counsel. It is believed, however, that those considered and passed on are all that are relevant or material.

As it is our conclusion that appellant had an impartial trial and was fairly convicted, the judgment is affirmed.