GUY W. ALBRITTON, EARNEST ALBRITTON and MELTON ALBRITTON v. STATE.

182 So. 286.
Opinion Filed June 15, 1938.

F. G. *Janes, Jr.,* and *Frank M. Harris,* for Plaintiffs in Error;

*Cary D. Landis,* Attorney General, and *Tyrus A. Norwood,* Assistant Attorney General, for the State.

PER CURIAM.—On March 18, 1937, Honorable Manuel M. Glover, County Solicitor for Polk County, Florida, filed an information in the Criminal Court of Record of Polk County, Florida, charging Guy W. Albritton, Earnest Albritton and Melton Albritton with the larceny of sixteen shoats of the value of more than $50.00, and the property of E. V. Whidden. The hogs, so it is alleged, were stolen on the 12th of February, 1937. The defendants on arraignment caused to be entered pleas of not guilty.

The defendants were placed upon trial and on April 29, 1937, were by a jury of Polk County convicted or found guilty as alleged in the information, and the jury found the value of the property alleged to have been stolen at the sum of $100.00. The defendants presented their motion for a new trial and the same was by the trial court overruled and denied, a bill of exceptions was prepared and signed,

writ of error sued out, transcript of the record prepared, and the entire proceedings had in the Criminal Court of Record in and for Polk County is here for review on several assignments of error which can be fully considered under some four or five questions.

One of the assignments is that the lower court erred in not granting defendants' motion for a directed verdict. This assignment raises the sufficiency of the evidence to sustain the verdict as found by the jury. The evidence shows that E. V. Whidden raised the hogs near Brewster in the southwest portion of Polk County. They were littered on August 12, 1936, and stolen on the 12th of the following February. The hogs were commonly known as house hogs, as differentiated from woods hogs. They ranged around the owner's farm and he fed them daily. The different members of his family and hands on the place knew the hogs and helped raise them. The hogs were marked in two different marks. Mr. Whidden was in the hospital when the hogs first disappeared. The Whidden family and hands on the place, as well as neighbors, knew the hogs and saw them around the place up until a few hours before they were stolen. A diligent and thorough search of the range established the fact that the hogs were no longer on the range.

The three defendants took some pork to Venable's market at Lakeland on the evening of February 12, 1937. They lived about six miles from the Whidden farm and one of the defendants called Venable's market at Lakeland from Mulberry about 7:30 and sold him the hogs which they had butchered, and a few minutes thereafter the three brothers delivered the pork freshly dressed. The two marks of the owner still appeared on the ears of the shoats after they were delivered by the defendants to the market. The owner of the hogs, hands on the farm, and neighbors testified as to the marks of the sixteen shoats and the owner-

ship thereof by Mr. Whidden. The ears were cut from the heads of the shoats and preserved and offered in evidence at the trial, showing the marks of the owner, E. V. Whidden.

The defendants admitted taking or delivering the identical hogs to the Venable market at Lakeland and no conflicts appear between their explanations of the delivery of the hogs, marks, date and hour of delivery, with the testimony of the State's witnesses. The real conflict appears when the defendants explain their ownership of the shoats, through a man by the name of Smith, a stranger whose acquaintance was made at Plant City where they went to sell berries; that they bought the hogs from Smith for the sum of $40.00, and the hogs were by Smith delivered to the defendants at their mother's home near Brewster; that Smith reached their home with the hogs in a truck about 3:00 o'clock P. M., and when the hogs were unloaded into the horse lot, the defendants then heated water, killed the hogs, cleaned and butchered them, and reached the market with them about 7:00 or 7:30 o'clock of the same afternoon, viz.: February 12, 1937. The defendants were unfortunate in not being able to procure the witness Smith at the trial and by his testimony corroborate their defense of the ownership and delivery to them of the hogs.

This Court has by an unbroken line of decisions held that it was error to direct a verdict on any question submitted on evidence that should have been considered by the jury. See Folsom v. Hoffman, 100 Fla. 1369, 131 So. 318. A verdict should be directed for one party only when the evidence is legally insufficient to sustain a verdict for the opposite party. Aberson v. Atlantic Coast Line R. Co., 68 Fla. 196, 67 So. 44. If the evidence is conflicting or will admit of different reasonable inferences, or if there is evidence tending to prove the issue, it should be submitted to

the jury as a question of fact to be determined by them, and not taken from the jury and passed upon by the court as a question of law. Cameron, etc., Co. v. Law-Engle Co., 98 Fla. 920, 124 So. 814; McKinnon v. Johnson, 57 Fla. 120, 48 So. 910; Starks v. Sawyer, 56 Fla. 596, 47 So. 513; Florida Cent., etc., R. Co. v. Williams, 37 Fla. 406, 20 So. 558; Southern Exp. Co. v. Williamson, 65 Fla. 286, 63 So. 433; L. R. A. 1916C 1208; Bass v. Ramos, 58 Fla. 161, 50 So. 945. 138 Am. St. Rep. 105; Wood Lbr. Co. v. Gipson, 63 Fla. 316, 58 So. 364; Paul v. Commercial Bank, 59 Fla. 62, 68 So. 68; Johnson v. Louisville & N. R. Co.,, 59 Fla. 305, 52 So. 195; Williams v. Sherry, 94 Fla. 998, 114 So. 849; German-American Lbr. Co. v. Brock, 55 Fla. 577, 46 So. 740; Atlantic Coast Line R. Co. v. Pelot, 62 Fla. 121, 56 So. 496. See King v. Cooney-Eckstein So., 66 Fla. 246, 63 So. 649, Ann. Cas. 1916C, 163; Gunn v. Jacksonville, 67 Fla. 40, 64 So. 435; Davis v. Ivey, 93 Fla. 387, 112 So. 264; Florida East Coast Ry. Co. v. Hayes, 66 Fla. 589, 64 So. 274; Jacksonville v. Glover, 69 Fla. 701, 69 So. 20; Gravette v. Turner, 77 Fla. 311, 81 So. 476; Gulf Refining Co. v. Ankeny, 102 Fla. 151, 135 So. 521.

A careful consideration of all the evidence in the case convinces us that the lower court ruled correctly in overruling and denying the motions of all the defendants, as well as the motion of the defendant, Melton Albritton, for a directed verdict, and submitting the facts to a jury under appropriate instructions, because it was within the province of a jury to pass upon the disputed question of facts as established in this case.

It is next contended that the court erred in charging or instructing the jury on the law applicable to the case on its own motion and in refusing to give a number of charges or instructions as requested by counsel for the defendants. We have considered the charge in its entirety as given by

the court on its own motion and the requested instructions of the defendants as given, as well as certain charges requested by the defendants and by the court refused. It appears that the entire charge given by the trial court fully covered the law applicable to the case as well as all the testimony adduced at the trial. We have failed to find error on the rulings of the trial court when it refused to give certain requested charges. It was in the mind of the trial court that the requested charges of the defendants and those refused by the court were fully covered by the entire charges given. We hold that no error occurred when the trial court refused to give the additional requested charges assigned as error here.

In the case of Lewis v. State, 55 Fla. 64, text 63-4, 45 So. 998, this Court said:

"It is settled law in this court that in passing upon a single instruction or charge it should be considered in connection with all the other instructions and charges bearing on the same subject, and if, when thus considered, the law appears to have been fairly presented to the jury, an assignment predicated upon the giving of such instruction or charge must fail, unless under all the peculiar circumstances of the case the court is of the opinion that such instruction or charge was calculated to confuse, mislead or prejudice the jury. Atlantic Coast Line R. Co. v. Crosby, 53 Fla. 400, 43 South. Rep. 318, 54 Fla. 34, 44 South. Rep. 757; Atlantic Coast Line R. Co. v. Beazley, 54 Fla. 311, 45 South. Rep. 761; Cross v. Aby, decided at this term. It is also settled law here that where an instruction, as far as it goes, states a correct proposition of law, but is defective because it fails to qualify or explain the proposition it lays down in consonance with the facts of the case, such defect is cured if previous or subsequent charges or instructions are given containing the required qualifications or exceptions.

It is now required that a single instruction should contain all the law relating to the particular subject treated therein. Atlantic Coast Line v. Crosby, *supra*, and authorities therein cited."

There appearing no error in the record the judgment appealed from is hereby affirmed.

WHITFIELD, TERRELL, BROWN, BUFORD and CHAPMAN, J. J., concur.