## STATE v. STOLLER.

No. 6764.  Decided January 4, 1945.  (154 P. 2d 649.)

Rehearing denied March 5, 1945.

See 22 C. J. S. Criminal Law, Sec. 676. Landlord and Tenant, 26 Am. Jur., 526.

*Charles M. Morris* and *Sidney G. Reid,* both of Salt Lake City, for appellant.

*Grover A. Giles,* Atty. Gen., and Herbert F. Smart, Deputy Atty. Gen., for respondent.

TURNER, Justice.

Appellant was convicted of involuntary manslaughter in the Third District Court of Salt Lake County and appeals. His assignments of error may be summarized as follows: (1) The giving of written instructions to the jury in the absence of the prosecuting attorney and counsel for the defendant after the jury had commenced its deliberations, the instructions having been given orally at the conclusion of the trial pursuant to the stipulation of counsel; (2) the court's refusal to admit in evidence the honorable discharge certificate of the defendant from the United States army, showing not only physical disability but also good character; (3) refusal of the court to give defendant's requested instructions Nos. 1 and 2; (4) the giving of the court's instructions Nos. 5 and 6; and (5) the denial by the trial court of defendant's motion for a new trial.

The evidence is in conflict as to just how the altercation between appellant and the deceased, W. C. Smith, started,

but there is no question or doubt but that the appellant struck the deceased, that the deceased fell or "slumped" to the floor and died at the hospital shortly thereafter from a basal skull fracture, and that appellant is a young man 31 years of age, weighing about 200 pounds, and the deceased was a man about 65 years of age and slight of build.

Appellant, an honorably discharged soldier, employed at the time of this occurrence at a service station in Salt Lake City, had entered the Boulder Inn, a beer parlor at 24 East 2nd South Street in Salt Lake City, sometime during the early afternoon of Saturday, April 15, 1944. There were quite a number of people in the place, lined up at the bar, drinking beer. Appellant stood at the south or rear end of the bar, drinking and talking to those about him. Deceased and his wife were seated at stools near the north end of the bar just inside of the entrance. Sometime around 5:00 or 5:30 P. M., the deceased left the place where he had been seated and walked to the vicinity of the rear end of the bar where appellant was. One witness, who had been talking to and drinking with appellant, but who could not repeat what actually was said between appellant and deceased, testified that they commenced to argue and after some heated words, appellant struck deceased with his fist and the latter fell to the floor. Appellant himself testified that deceased asked him to buy him some beer and that when he told deceased he could not, that he was broke, deceased applied a vulgar epithet and "slapped" appellant "in the face," "and I slapped him back." The fact remains that deceased was rendered unconscious, did not regain consciousness, and died in the County General Hospital some two hours later.

The City Physician testified that a post mortem performed by him upon deceased's body shortly after his death revealed a basal skull fracture along the left side of the skull, and that there was a bruise on the left side of the

jaw which in his opinion had been caused by a fist. He then testified:

"There are two types of skull fractures; one where a rapid moving small object strikes the vault of the skull it usually produces a depressed skull fracture. Another where the rapid moving object is the head itself, which strikes a fixed object, as a floor or a beam or pole. In the latter case the fracture is almost always a basal affair. * * * This fracture was probably produced where the moving object here was the head striking against a fixed object."

We shall consider the assigned errors in the order above set out. At the conclusion of the trial, counsel stipulated that the jury might be instructed orally, which was done. Sometime after they had retired to deliberate, and in the absence of the prosecuting attorney and counsel for the defendant, but in the presence of the defendant, the jury returned into court and requested that the instructions be given to them in writing. This the court did, and the instructions so given in writing were identical with those which had been given orally.

Appellant contends this was reversible error, that such action in the absence of the prosecuting attorney and counsel for the defendant, being in direct contravention of the stipulation for oral instructions, was prejudical to his cause and violated his constitutional rights. Appellant cites *Hopson* v. *State,* 116 Ga. 90, 42 S. E. 412, and *Kinnemer* v. *State,* 66 Ark. 206, 49 S. W. 815, in support of his contentions. Neither case supports him. In both not only counsel but the accused was absent from the court room when the instructions were re-read to the jury. Our statute, Sec. 105-33-3, U. C. A. 1943, provides:

"After the jury shall have retired for deliberation, if there is any disagreement among them as to the testimony, or if they desire to be informed on any point of law arising in the cause they must require the officer to conduct them into court. Upon being brought into court, the information required must be given in the presence of, or after notice to, the prosecuting attorney and the defendant or his counsel."

While it does not appear that notice was given to either counsel for the prosecution or the defense, the prosecuting attorney naturally makes no objection. The statute is in the disjunctive, and the minutes of the trial court show that the defendant was present in person. We are of the opinion, therefore, that no error was committed in this respect.

Appellant took the stand in his own defense. Effort was made to introduce in evidence his certificate of honorable discharge from the United States army, objection to which was sustained. Appellant assigns as error the refusal of the trial court to admit this evidence and cites text and cases which we have examined and find have no support for his contention. The general rule applicable here is stated in 22 C. J. S., Criminal Law, § 677, at p. 1076, as follows:

"Military record. The reputation of accused with respect to his service in the army or navy is generally not relevant either to prove or to disprove his good character." (Citing cases, quod vide.)

Such a certificate of discharge was held inadmissible to show good character in the case of *State* v. *Taylor,* 293 Mo. 210, 238 S. W. 489, the court saying, at page 491 of 238 S. W.:

"The evidence here sought to be introduced consists of the honorable discharge of the defendant from the United States army for the purpose of proving his good character. Leaving out of consideration the question as to whether traits of character necessary to constitute a good soldier may be reasonably construed as strengthening the presumption of defendant's innocence when charged with highway robbery, we are confronted, as necessarily preceding such a discussion, with the question as to whether the evidence of this particular nature is primarily admissible. This matter has not been ruled upon in this jurisdiction, but has elsewhere.

"It is pertinent before discussing the rule of evidence involved to inquire as to the nature of a soldier's discharge. It is not contended that it is a record or a copy of a record. It consists in this instance simply, as authorized by the Army Regulation (section 147), of a certificate of discharge, signed by a colonel of infantry, presumably the commanding officer, stated the facts in regard to the services

of one Henry E. Kuhn, which the defendant stated on the witness stand was his real name, and that his character was excellent at the date, September 17, 1919, it was issued. The recognized purpose of this paper is to place in the possession of a discharged soldier, in this case the defendant, evidence of his lawful discharge and afford him authentic proof for his protection. As such it cannot be classified other than as merely a written declaration, wholly ex parte, made by a third party out of court, and, under a fundamental rule of evidence, not admissible." (See other cases collected in the opinion.)

This assignment is therefore without merit.

In his request No. 1, appellant requested the ▉▉▉ court to instruct the jury, in part, as follows:

"You are instructed that the defendant is charged with involuntary manslaughter. To convict the defendant under this charge you must find beyond all reasonable doubt: First, that the act of the defendant was the direct cause of the death of the decedent, and that death did not result from some other cause, such as falling against some immovable object or falling and striking his head upon the floor. * * *"

It requires no citation of authority to demonstrate that this request does not state the law. The court, in its instruction No. 5, to which appellant objected and assigns error, stated:

" 'Proximate cause' as used herein means the act or happening which set in motion the chain or course of events which, by a natural order or sequence of things, and without any independent cause, resulted in the death of W. C. Smith."

The expression "proximate cause" is commonly used in negligence cases and is not to be commended in criminal procedure. It is well, as a matter of practice, to keep the concepts of negligence out of criminal proceedings so as to avoid confusion.

In cases such as this one involving involuntary manslaughter, there is often an underlying basis which differs from negligence, largely only in degree. The idea the court sought to convey to the jury in the instruction was basically correct, in view of which fact and the record

in this case, we cannot see how the defendant could have been prejudiced by the instruction, for in effect it probably increased the burden of the state. It undoubtedly did not lessen the state's obligation.

In his request No. 2, appellant requested the court to instruct the jury as follows:

"You are instructed that if you believe from the evidence that the decedent approached defendant using insulting language, and slapped defendant on the face with his hand, then defendant would have the right to retaliate by slapping decedent upon the face with his hand, and if decedent stumbled and fell that is not of itself chargeable to the defendant, but there must be other circumstances showing an unusual and unnecessary use of force."

We find no error in the court's refusal to give this instruction as framed. We have carefully examined and considered the instructions given and are of the opinion they fully and fairly cover the issues in the case. There is no element of self-defense or justifiable or excusable homicide involved, and the jury by its verdict undoubtedly disbelieved the defendant's testimony in respect to the deceased having "slapped" him in the face, or, if they believed that he did, in view of the relative age and size of the defendant and the deceased, they did not believe there was such provocation as to warrant defendant striking deceased in the manner they believed he did.

The court in its instruction No. 6 advised the jury as follows:

"Evidence has been introduced to the effect that the deceased, W. C. Smith, used profane insulting and vile language towards the defendant. If you believe from the evidence such was the case, you are instructed that the law does not justify the defendant under those circumstances to retaliate by striking the deceased, W. C. Smith."

We find no error in the giving of this instruction in view of all the facts and circumstances of the case.

What we have said above also disposes of appellant's assignment that the trial court erred in denying his motion for a new trial. Finding no error in the record, the judgment of the lower court is affirmed.

LARSON, C. J., and McDONOUGH, J., concur.

WOLFE, Justice.

I concur in the result.

I have some doubt whether Sec. 105-33-3, U. C. A. 1943, applies to the case where oral instructions through stipulation are later presented in writing to the jury at its request. The jury is not informed on any point of law in regard to which it was not informed in the presence of the defendant and his counsel. It is simply given the same instruction in writing which was given to it orally. The stipulation that the court might give oral instructions was not to withhold from the jury a better opportunity to consider the law applicable but for the purpose of expediting the trial. The parties had opportunity to take their exceptions. The stipulation is a waiver of the requirement that the jury must be instructed in writing. It is not meant to substitute a requirement that the instructions must be given orally. The stipulation in effect gives the court a choice whether it will give oral or written instructions, a choice it would not have if the parties did not stipulate. See *State* v. *Aikers,* 87 Utah 507, 51 P. 2d 1052.

WADE, J., concurs in the opinion and also in the views expressed by Mr. Justice WOLFE.