## JAMES F. RAY v. STATE OF FLORIDA

31 So. (2nd) 156
June 17, 1947
Rehearing Denied July 15, 1947

June Term, 1947
Special Division A

*John M. Coe* and *Coe & Eggart,* for appellant.

*J. Tom Watson,* Attorney General, *Reeves Bowen,* Assistant Attorney General, for appellee.

WILLIAMS, Associate Justice:

The evidence discloses that a nine year old girl was subjected to a cruel, shocking and heartless sexual assault behind the Star Theatre, in Fort Walton, Florida, between 8:00 and 9:00 P. M., on the night of August 22, 1946. The evidence placed appellant in said town on said date from early afternoon until about 9:00 P. M. that night and in front of the Star Theatre a few minutes before said assault. The evidence shows appellant imbibed beer and whiskey freely in Fort Walton that afternoon. The evidence shows he made known his flushed sexual desires to three witnesses. The evidence shows appellant recognized the victim by having seen her before. After the assault appellant repaired to the beach and slept a period and then early in the morning of August 23, 1946, walked down the road that leads to Milton, Florida, and on this road he was taken in charge by some citizens who examined him and then he was taken in custody by a police officer and a military policeman, who took him to the home of the victim, who was there awakened by her mother and the victim was brought to the front of the home, where appellant was with the two officers, and the victim first said she did not know if appellant was her assailant and then she positively identified him. It was daylight then. The victim said the reason for her hesitancy in identification of appellant was that her eyes were not open naturally, by reason of her being suddenly awakened, and they burned, and had matter in them, and that when she could see well she recognized appellant as her assailant. There is a slight discrepancy in the record as to the color of the shirt worn by appellant, which discrepancy was between the evidence of the victim, the appellant, and another witness. Appellant testified the victim first said she did not know appellant was the assailant; that her mother took her in the home, bathed the victim's face, and was in the home about ten minutes and brought the victim before the officers; that her mother nudged the victim and then the victim identified appellant. At the trial the victim identified appellant as her assailant by pointing him out in the court room. Appellant denied the assault and denied he had been near the Star Theatre on the date mentioned. The

military policemen said when they accosted appellant he denied he had been in Fort Walton the date of the attack. This attributed statement of appellant to the military policemen was not denied by him at the trial. The jury settled the conflicts of evidence in the trial and their verdict was upheld by the trial judge, who saw the witnesses and heard and watched them as they testified. The evidence was free of unnatural and inherently improbable evidence, and it was the province of the jury to decide what part of the evidence was true. Smith v. State, 66 Fla. 153, 63 So. 138; Thomas v. State, 73 Fla. 115, 74 So. 1. The appellant was sentenced to serve five years in the State penitentiary for his offense. The questions presented by appellant are: Was the identification legally sufficient; should the court have allowed in evidence in proof of appellant's character his honorable discharge from the army. The identification of appellant as the assailant as disclosed by the record is substantial and reasonable and does not have the frailties, insufficiencies, deficiencies, inadequacies and uncertainties therein as were discussed in Clark v. State, 98 Fla. 874, 124 So. 446; Anderson v. State, 92 Fla. 477, 110 So. 250; Mathis v. State, 121 Fla. 232, 163 So. 479, and 16 C. J. 774.

The victim saw her assailant the night of the assault in front of the Star Theatre, and all during the assault, back of the Star Theatre, which consumed several minutes, and during that time the victim had ample time, occasion and opportunity to make careful observation of her assailant, his features, voice, mannerisms and demeanor, so as to be able to isolate him in her mind and memory from other people. Generally, identity of a person charged with crime, where there are conflicts in the evidence, is for the jury to decide. See Harris v. State, 129 Fla. 733, 177 So. 187; Chastain v. State, 136 Fla. 388, 189 So. 49, In Chastain v. State, in the text, 189 So. 50, on identification of a person charged with crime, this Court said:

"The consideration of all the evidence shows a sharp conflict on the part of the evidence of the witnesses for the State and defense, and especially is this true as to the identity of the defendant. There is no uncertainty about the bank being

robbed on the morning of March 3, 1936, and the employees of the bank identified the defendant as one of the group, and the province of a jury is to determine or settle conflicts in evidence. . . . "

The essentials of proof required in a charge of this kind were fully established by the evidence. See Mack v. State, 54 Fla. 55, 44 So. 706, 13 L. R. A., N. S. 373, 14 Ann. Cas. 78. The failure of the defendant to refute the testimony of the military policemen, that defendant has said he had not been in Fort Walton, his sudden disappearance from the scene, his denial of having been in front of the Star Theatre, clearly shown to be untrue, and other parts of his testimony, including his attempt to convince the State Attorney that appellant had experienced a "mental blackout" during the times referred to in the evidence, show conscious guilt on the part of appellant. Vaccaro v. State, 152 Fla. 123, 11 So. (2) 186; Underhill's Criminal Evidence, 4th Ed., 465, et seq. On the question of whether or not the honorable discharge from the army should have been admitted in evidence, its recitals are purely hearsay and do not afford cross examination essential to a proper focus of the truth. There is one case in the United States which holds that such a document is admissible on the question of good reputation for honesty and fair dealing. See Timmins v. Hale, 122 Ore. 24, 256 P. 770. That case was a civil action. This decision, in our opinion, is contrary to the weight of authority, sound reasoning and logic. We have held several times how character may be shown in an action. See 4 Enc. Dig. of Fla. Reports, p. 105, et seq.; Nelson v. State, 32 Fla. 244, 13 So. 361; Stanley v. State, 93 Fla. 372, 112 So. 73. In Johnson v. State, 57 Fla. 18, 49 So. 40, we held a certificate by the Superintendent and a physician of the State Hospital for the Insane to be inadmissible. In that case this Court said, 49 So., text 41:

"To rebut the defendant's evidence as to his insanity at the time of the alleged homicide, the court admitted in evidence, over the objection of the defendant, a certificate of the superintendent and physician at the State Hospital for the Insane to the effect that the defendant was on July 25, 1908, 'discharged from the hospital by order of the examining board; he not being insane.'

"The issue being tried was the insanity of the defendant when the homicide was committed; and even if the certificate had any bearing upon that issue, it was not legal evidence.

"The statute does not make the certificate evidence for such purpose, and it does not appear that the defendant had been given in a judicial proceeding an opportunity to cross-examine the persons making the certificate. See Putnal v. State, 56 Fla. ........, 47 So. 864."

In Jenkins v. State, 35 Fla. 737, 18 So. 182, 48 Am. St. Rep. 267, we held that a certificate of what a witness said before the grand jury was not admissible as proof of the assertions therein, as it violated the rule against hearsay and foreclosed the right of cross-examination. We said (18 So., text 189):

"The state's attorney should have been examined as to his knowledge of what the accused stated, and an opportunity afforded to investigate what was said, independent of any written statement made at the time."

The following authorities hold that an honorable army discharge from the United States Army or a certificate of military service are not admissible for the purpose of proving good character. State v. Taylor, 293 Mo. 210, 238 S. W. 489; State v. Hewitt (Mo.) 259 S. W. 773; (this was a prosecution for rape). State v. Stoller, 107 Utah 429, 154 P. (2) 649; 22 C. J. S., p. 1076, Sec. 677; Taylor v. State, 120 Ga. 857, 48 S. E. 361; Glisper v. Commonwealth, 186 Ky. 276, 217 S. W. 348; People v. Eckman, 72 Cal. 582, 14 P. 359; State v. Unger, 103 N. J. L. 18, 134 Atl. 886; Hodge v. United States, 13 Fed. (2) 596; Burns v. State, 23 Tex. App. 641, 5 S. W. 140; State v. Shaw, 75 Wash. 326, 135 P. 20; Keyes v. Keyes, 27 N. M. 215, 199 P. 361; 16 C. J. 583, Sec. 1125, 36 C. J., 894, Sec. 474, Wharton's Criminal Evidence, 11th Ed., Vol. 1, p. 463, Sec. 331. The rule is stated:

"An honorable discharge of the accused from the United States Army is not admissible to prove good character,—it is merely an ex parte written declaration made by a third party out of court."

Wharton's Criminal Evidence, supra.

We find no harmful error in the judgment appealed from and, therefore, the same is hereby affirmed.

THOMAS, C. J., BUFORD and CHAPMAN, JJ., concur.