## YOUNG v. COMMONWEALTH.

Court of Appeals of Kentucky.
March 23, 1951.

Don A. Ward, Hazard, for appellant.

A. E. Funk, Atty. Gen., Zeb. A. Stewart, Asst. Atty. Gen., for appellee.

STEWART, Justice.

Appellant, Gus Young, was convicted in the Perry Circuit Court on May 24, 1950, of the offense of voluntary manslaughter and received a sentence to serve 21 years in the penitentiary. He appeals and urges the. following grounds for reversal:

(1) The court erred in overruling appellant's motion to continue the case.

(2) The court erred in failing to give an instruction to the jury of the right of appellant to defend his home.

Joe Young was the innocent victim of a fight that grew out of a prolonged feud between Chester Young and his family, on the one hand, and Gus Young and Harrison Young and their families, on the other hand. All of the Youngs are brothers, but they had quarreled and fought among themselves continually since their father's death, four or five years prior to the killing of Joe, because of their inability to agree on a division among themselves of the small mountain farm their deceased father had left them.

Joe Young had lived in the home of his mother and father for 25 or 30 years. We shall refer to it hereafter as the "old home place". Four or five months prior to Joe's death, Gus Young and his wife, Mallie, had, unsolicited by him, moved in with Joe. The "old home place" is located on the right hand side of Gorman branch, as one goes up the hollow into the mountain. Farther up, on the same side of the branch, Harrison Young lived with his family. Across the branch, about 85 feet from the "old home place", is the abode of Chester Young.

The evidence is conflicting as to the manner in which Joe Young met his death. The witnesses even contradict themselves. Joe was killed at about 5:30 p. m., on August 10, 1949. Chester Young, his wife, Malvery, and their daughter, Mary Belle, testifying for the Commonwealth, give this version of the murder:

Just before the shooting began, Harrison Young, Mallie, Gus Young's wife, Mary York, Harrison's stepdaughter, and Joe Young were sitting on the front porch of the "old home place". Mallie suddenly grabbed Joe by the chest, and Harrison and Mary York went through his pockets, searching for money, cigarettes or something. Directly after this occurred, Joe jumped off the porch, ran across the branch, next around a barn on Chester Young's place, and then toward the kitchen door at the rear side of Chester's house. Chester was milking at the time and, as he saw Joe running toward his home, he heard Gus shout "Pour down on him". Immediately shooting commenced. Some twenty-five or thirty shots were fired, he said. Joe fell on the door steps leading into the kitchen of Chester's residence. Joe crawled through the house and came out a door at the front. There he died. Dr. C. B. Combs, who later examined him, testified that he had been shot in the back with a .22 bullet, which had penetrated his left shoulder and angled toward his heart region. Chester stated he could not see the persons who had fired upon Joe, but that the shooting came from the direction of the "old home place". Malvery and Mary Belle testified that Joe ran across the branch toward where Chester was milking, hollering: "Run to me; they are going to kill me." They heard Gus say: "Let him have it". At that time Gus was in his yard between two apple trees, Harrison was nearby behind a pear tree and Mallie was in the door of her house. All were firing toward Chester's house. When the fusillade was over, Chester had been hit in the arm, Mary Belle had been shot in the leg, and Joe had been killed.

Gus denied that he killed Joe. The trouble started in the late afternoon of that day, he said. He had sold some apples to Pearl Fields and his wife out of the orchard on the "old home place". Chester stopped Pearl Fields and his wife as they were leaving with the fruit and demanded that they buy no more apples from Gus. "Them ain't his apples", Gus quoted Chester as saying to the Fields. Gus testified that Chester came into his yard, a short time later, with a rock in each hand. He was still wrought up over the apple transaction. After warning Chester not to come another step, Gus said he shot Chester in the arm with his .22 rifle because he kept advancing. On direct examination, he stated that this was the only shot he fired on that occasion. Later, on cross examination, he testified that both he and Harrison shot toward Chester at the time Joe was running from them and over to Chester's place.

Gus stated that as Joe came from his work in Hazard around 4:30 or 5:00 p. m., Chester stopped him down on the branch and talked to him some 30 minutes. Joe then came on to the "old home place" and sat down on the porch with Gus, Mallie and Mary York. He denied that they held him and searched him. Chester soon began to yell for Joe to come over. Gus then told him: "Joe, you get out and you will get killed." The third time Chester called for him, Joe started over toward Chester. Then Gus and Harrison began shooting toward Chester's home. This frank admission was made by Gus. Mallie Young's account of the events of the day correspond to the statements of her husband, Gus, until she described the shooting affray. She said that Harrison had an old shotgun

which he fired just one time. "He never did have any .22", she testified. "Only Gus had a .22", she stated. Then she was asked this question: "You don't know who shot Joe Young?" Her answer was: "It lays between Gus and Malvery." She said that Malvery had come to the kitchen door as Joe ran toward Chester's house, with a pistol in her hand, "and she was handing it toward Joe", she continued. No one testified that Malvery ever discharged the pistol at any one.

As there is no question of the sufficiency of the evidence to sustain the verdict, we immediately give our consideration to the grounds for reversal specifically urged by appellant.

Appellant insists that the lower court erred in overruling his motion for a continuance: First, because appellant was placed on trial on the same day the indictment of May 23, 1950, was returned against him; and second, because of the absence from the trial of Pearl Fields and his wife, claimed as material witnesses in his behalf, both of whom had been duly subpoenaed by him.

As to appellant's first contention, it is true, as he asserts, that Sections 185 and 187 of the Criminal Code of Practice provide, in substance, that a defendant shall not be tried within less than three days after the indictment is returned against him. An examination of the record of this case reveals that a former indictment was returned against appellant on September 13, 1949, which was quashed on May 22, 1950, and a second indictment, dated May 23, 1950, was substituted therefor. The former indictment charged the identical offense and used the same language as the subsequent indictment, the only change being the addition of Harrison Young as a defendant along with Gus Young and Mallie Young.

This Court held in the case of Brock v. Com., 225 Ky. 264, 8 S.W.2d 390, that a second indictment, charging substantially the same offense as the first indictment, relates back to the date of the first indictment; that the new indictment takes the place of the old indictment; and that the defendant, if he has been arrested under the old indictment the requisite time, may be tried on the same day the new indictment is returned. See also Hogan v. Com., 185 Ky. 424, 215 S.W. 183.

The next contention of appellant, namely, that a continuance should have been granted to him because of the absence of Pearl Fields and his wife from the trial is without merit. There is no claim, as disclosed by the record, that these witnesses were present, or even near-by, at the time Joe Young was shot or killed, or that they saw or heard any of the difficulties that preceded the shooting. Manifestly, the facts the Fields would have testified to, had they been at the trial, would not have been relevant to the issues involved in the case at bar. Moreover, everything set forth in the affidavit for continuance as to what Pearl Fields and his wife would have testified to about the apple transaction, if they had been present in court, was fully proven by other witnesses. Accordingly, appellant did not suffer by the failure of the Fields to appear and testify in his behalf.

Finally, appellant's insistence that he was entitled to an instruction on his right to defend his home has no application whatever to the case at bar for many valid reasons. Gus Young and Joe Young lived in the same house. Then, too, it is uncontradicted that, at the time Joe Young was killed, he was fleeing unarmed from his and Gus Young's home. Next, the evidence was clear that Chester Young had been shot in the arm at the time and had retired from the scene of battle, so that Gus Young was not in any immediate danger at the hands of Chester Young or any one else, as for that matter. A jury should not be instructed upon a theory of the case not sustained by the evidence. Stanley's Instructions to Juries, Sec. 765, p. 1033. Finally, Instruction No. 4 fully placed before the jury Gus Young's right to resort to very drastic measures of self-defense to protect his life.

We have found no errors prejudicial to appellant's substantial rights.

The judgment is affirmed.