223 So.2d 561 (1969)
Phillip WEINSHENKER, Appellant,
v.
The STATE of Florida, Appellee.
No. 68-80.
District Court of Appeal of Florida. Third District.
February 25, 1969.
Rehearing Denied March 24, 1969.
*562 Robert L. Koeppel, Public Defender, and Herbert M. Klein, Asst. Public Defender, for appellant.
Earl Faircloth, Atty. Gen., and Jesse J. McCrary, Jr., Asst. Atty. Gen., for appellee.
Before PEARSON, HENDRY and SWANN, JJ.
PEARSON, Judge.
The State filed a two-count information charging Phillip Weinshenker with breaking and entering an apartment with intent to commit robbery and with robbery and another information charging him with committing a crime against nature. The court reduced count one of the first information to entering without breaking and directed a verdict of not guilty on the crime against nature charge. A jury found Weinshenker (1) guilty of entering an apartment without breaking and (2) guilty of robbery. The court entered a judgment of conviction and sentenced him to five years imprisonment on the first count and fifteen years on the second count.
Weinshenker had previously been adjudicated guilty of another felony and had been placed on probation for three years. Prior to pronouncing sentence in the present cause the court heard testimony to determine whether Weinshenker violated the terms of that probation. After concluding that Weinshenker had violated probation, the court revoked probation and sentenced him to three years imprisonment. The three sentences were to run consecutively. This appeal is from the judgment of guilt and the sentence imposed as a consequence of that judgment.
Phillip Weinshenker, the appellant, was a co-defendant with Jessie Joseph Tafero, whose appeal is decided with an opinion filed this day, 223 So.2d 564. We stated most of the facts concerning this appeal in the Tafero opinion. The following are facts material to Weinshenker's appeal which we did not list in the Tafero appeal.
Miss C.A.B. never identified Weinshenker as Billy. She viewed two different lineups in the Dade County Public Safety Department Building on two separate occasions and identified two different men as Billy. Neither of the men was Weinshenker.
Miss C.R. was unable to identify Weinshenker as Billy from police photographs. But she did identify Weinshenker as Billy at a lineup in the Dade County Public Safety Department Building on November 21, 1967. Weinshenker's lawyer was present when she made the identification. Miss C.R. also made an in-court identification of Weinshenker as Billy.
Weinshenker urges first that the trial court should have directed a verdict of acquittal at the close of the state's case or, in the alternative, should have directed a verdict of acquittal at the close of all the evidence. Under this point the appellant *563 urges that there was not sufficient evidence to establish that he was Billy.
In dealing with this point we begin by quoting an axiomatic legal principle, "[t]he prosecution has the burden of establishing beyond a reasonable doubt the identity of the defendant * * *." 1 Wharton's Criminal Evidence § 16, p. 46. We understand this to mean that the state must prove that the defendant and the perpetrator of the crime with which the defendant is charged are one and the same.
In Adams v. State, Fla.App. 1958, 102 So.2d 47, the First District Court of Appeal stated, in substance, that whether a motion for a directed verdict of acquittal made at the close of the state's case should be granted depends upon whether the state met its burden of proof by making out a prima facie case against the defendant, that is, whether the state "establish[ed] the guilt of the accused beyond and to the exclusion of every reasonable doubt * *." 102 So.2d at 49 (emphasis added). As we understand it, the foregoing principle would require a trial judge, in ruling on a motion for a directed verdict of acquittal made at the close of the state's case, to ask himself the following question: If the trial were to end now, could the jury as reasonable men find the defendant guilty beyond and to the exclusion of a reasonable doubt? If his answer is affirmative, the trial judge must deny the motion; if it is negative, he must grant the motion. In the Adams case the judgment of conviction was reversed because the court held that the state had not established the guilt of the defendant to the exclusion of every reasonable doubt and (inferentially) that the trial judge should have granted the defendant's motion for a directed verdict of acquittal.
In the present case the sole proof that Weinshenker was Billy was the evidence Miss C.R. gave. This evidence included testimony that Miss C.R. identified Weinshenker as Billy because, among other things, she recognized his voice.[1] It is well settled in Florida that a person may be identified as the perpetrator of a crime solely by means of voice recognition. In Mack v. State, 54 Fla. 55, 44 So. 706, 13 L.R.A.,N.S., 373, 14 Am.Ann.Cas. 78 (1907), a rape victim identified her assailant solely by his voice. The court held that a witness may be permitted to identify an accused solely from having heard his voice and that such identification is direct and positive proof of a fact the probative value of which was a question for the jury. See, too, Simon v. State, Fla.App. 1968, 209 So.2d 682. We hold that by introducing the identification testimony of Miss C.R. the state met its burden, described above, of proving to the exclusion of every reasonable doubt that Weinshenker was Billy.
Once the state met this burden, the issue of identity was for the jury to decide. See Holland v. State, 129 Fla. 363, 176 So. 169 (1937); Albritton v. State, 132 Fla. 801, 182 So. 286, 287 (1938). The jury must also decide any conflicts in the evidence concerning the identity of an accused. Ray v. State, 159 Fla. 101, 31 So.2d 156, 172 A.L.R. 726 (1947). It must be *564 assumed on appeal that any inconsistencies which appear from the testimony were reconciled by the jury against the defendant. Parrish v. State, Fla.App. 1957, 97 So.2d 356. A careful review of the record convinces us that a case sufficient for submission to the jury was made by Miss C.R.'s positive identification.
The appellant's second point urges that it was error for the court to admit evidence of a second crime and that the admission prejudiced the appellant. The second crime was the beating of Miss C.R. which took place on March 22, 1967. It is established in Florida that the sole test of the admissibility of such evidence is relevancy. Williams v. State, Fla. 1959, 110 So.2d 654. The testimony about the second attack upon Miss C.R. was admissible because it was relevant to the issue of identity.
Weinshenker's third point challenges the sufficiency of the hearing at which his probation was revoked. The requirements for such a hearing are set forth in § 948.06, Fla. Stat., F.S.A. An examination of the statute and the record in this case demonstrates that the hearing afforded the appellant was sufficient under the statute. Cf. Brill v. State, 159 Fla. 682, 32 So.2d 607 (1947); McNeely v. State, Fla. App. 1966, 186 So.2d 520.
The fourth point urges that the trial court erred when it permitted prosecution witnesses to testify concerning the identification of photographs by the victims when such identification occurred in the absence of defense counsel. As we stated earlier in this opinion, neither of the victims was able to identify the appellant from photographs. Therefore, the fourth point is totally without foundation. If Weinshenker's fourth point had any foundation, we would hold that it presented no error for the same reasons we gave in the Tafero opinion.
Having reviewed the record in the light of the points presented and having found no reversible error, we affirm the judgment and sentences appealed from.
Affirmed.
NOTES
[1] On Cross-examination

"Q Now, go ahead and give us the reason why, when you looked at the picture of Phillip Weinshanker, you could not identify him? Tell the jury why.
A From the picture, from the photograph?
Q Yes, ma'am.
A Because I wasn't sure. The way I mainly could identify him is by hearing his voice, seeing his size, seeing his profile, the way I saw him in my apartment; not from a photograph from two years ago.
Q Now, [Miss C.R.], you at no time during the day of March 4, 1967, ever had a good look at this man named Billy in that apartment?
A You are wrong, sir.
Q I am wrong?
A Yes.
Q It was clear enough to distinguish his features?
A It certainly was * * *."